**In the matter of PETITION for the NAT-URALIZATION OF Ingeborg Maria Elizabeth NOLAND.**

**No. 9034.**

United States District Court
D. Nebraska.
July 22, 1960.

William J. Hotz, Jr., Omaha, Neb., for petitioner.

Fred J. White, Naturalization Examiner, Omaha, Neb., in opposition to petition.

DELEHANT, District Judge.

Petitioner seeks admission to citizenship under the provisions of Title 8 U. S.C.A. § 1430(a). Her petition is resisted by the Immigration and Naturalization Service of the Department of Justice. With only brief earlier confirmatory testimony by the petitioner herself, submission of the petition was made by a written stipulation. In substantial part, that stipulation unequivocally establishes certain facts. For the rest, it agrees that, if she were called as a witness in this proceeding, the petitioner would give certain testimony which is set out in detail in the stipulation. Even before the execution and filing of the stipulation, she had actually testified at a brief hearing in open court. Of the evidence thus given by her, it may sufficiently be said that it serves generally to support, and somewhat to amplify, the declarations of the stipulation as to the testimony she could give. Considering that her evidence and the stipulation warrant the court's acceptance as true of the available testimony which the stipulation thus attributes to her, the court now proceeds to set out the facts pertinent to this controversy.

Petitioner was born as Ingeborg Maria Elizabeth Muenchow on April 30, 1923, at Lauban, Silesia, Germany. In the way of formal education, she completed a High School course, and two years of University study, all in Germany. In addition, she has had several years of service in responsible employment requiring a substantial degree of intelligence, both in Germany and more recently in the United States.

On September 24, 1955, at Darmstadt, Germany, petitioner was married to Lee F. Noland, a non-commissioned officer in the United States Army, whom she had met in Germany in June, 1949. Lee F. Noland was throughout his life a native born citizen of the United States.

Petitioner was lawfully admitted for permanent residence in the United States on July 25, 1956, and since that date has continously resided in the United States.

On August 14, 1959, thus slightly more than three years after her lawful admission into the United States, petitioner, then an alien, filed her petition for naturalization in this proceeding and in this court.

During the three years immediately preceding August 14, 1959, the petitioner had lived in marital union with Lee F. Noland, her citizen spouse, and had been physically present in the United States for periods totaling at least half of that time, and had resided within the state in which she filed her petition for at least six months; and Lee F. Noland had been a United States citizen during all such periods.

Lee F. Noland died on November 9, 1959. The petitioner is not now married to the United States citizen spouse with whom she had lived in marital union during the three years immediately preceding the date of the filing of her petition in this proceeding, and with whom she was living when she filed such petition.

Prior to her departure from Germany, plaintiff had been employed for four and one-half years by the Quartermaster Corps of the United States Army in Germany. She received commendation for the excellence of her performance of her duties in that employment.

Lee F. Noland, who was a soldier in the United States Army at the time of his marriage to petitioner, served continuously as a regular soldier in the United States Army from 1925 until his retirement, with the rank of Sergeant

First Class, in 1957. He was advised in writing that his military service was characterized by an exceptionally high order of loyalty and military efficiency.

On or about July 25, 1956, petitioner arrived in the United States from Germany, having been lawfully admitted for permanent residence. She has resided thereafter in the United States at the following places, and for the following intervals of time:

July 25, 1956 to August 14, 1956, enroute to Lawton, Oklahoma;

August 14, 1956 to February, 1957, Lawton, Oklahoma;

February, 1957 to June, 1957, Pismo Beach, California;

June, 1957 to September, 1957, Ozark, Missouri;

September, 1957 to December, 1957, Colorado Springs, Colorado; and

December, 1957 to the present time, Omaha, Nebraska.

She continues to reside in Omaha, Nebraska.

On July 23, 1959, petitioner executed an Application to File Petition for Naturalization, and on August 14, 1959, filed her Petition for Naturalization under Sec. 319(a) of the Immigration and Naturalization Act, Title 8 U.S.C.A. § 1430(a).

Petitioner was advised by the Immigration and Naturalization Service that if the depositions of all of her character witnesses were received in time in satisfactory order her petition would be eligible for final hearing on September 17, 1959. She took to the Immigration and Naturalization office on October 30, 1959, a letter from an attorney in San Luis Obispo, California, dated October 25, 1959, advising that one of the petitioner's witnesses in Pismo Beach, California, had declined to execute a deposition for the petitioner. Whereupon Naturalization Examiner White informed her that such deposition would not be needed, and that her petition would be eligible for final hearing at the next hearing scheduled for November 19, 1959. Further, on November 3, 1959, she was advised by letter dated November 2, 1959, that she should be present in the appropriate United States District Courtroom on the 19th day of November, 1959, when the final oath would be taken and citizenship granted.

Petitioner then advised her husband of the fact that she was going to receive her United States Citizenship on November 19, 1959, and her husband, who had been seriously sick and was at that time in the Veteran's Hospital, indicated his pleasure that his last wish, namely citizenship for his wife, was being satisfied, and uttered the words "That's good." These were the last words of her husband, who then lapsed into a coma and died November 9, 1959, at the Veteran's Administration Hospital, Omaha, Nebraska.

Immediately after the funeral of her husband and on or about the 11th or 12th of November, 1959, being anxious to provide the facts to the Immigration and Naturalization Service, petitioner advised Mr. Robert C. Wilson, District Director of the Immigration and Naturalization Service, of the death of her husband on November 9, 1959. Mr. Wilson told her not to come to the hearing on November 19, 1959, stating that she was no longer the spouse of a citizen and, therefore, was not eligible under the provisions of Sec. 319(a) of the Immigration and Naturalization Act.

Upon advice of counsel, petitioner attended the naturalization hearing, and the matter of the hearing of November 19, 1959, pertaining to the petitioner was continued pursuant to order of the court. Further hearing on the matter was held before the writer of this memorandum as a judge of the United States District Court, on the 24th day of May, 1960, and continued for the preparation and execution of stipulation, or for the calling of additional witnesses as the parties might desire.

On February 14, 1960, petitioner married Roy A. Noland, a brother of her deceased husband, Lee F. Noland. Her present husband is also a citizen of the

United States, and they reside in the city of Omaha, Nebraska. She is presently employed with the engineering firm of Henningson, Durham & Richardson.

Petitioner is, and throughout her residence in the United States has continuously been, a person of good moral character, attached to the principles of the Constitution of the United States, and well disposed to the good order and happiness of the United States. Constantly and consistently during her residence in the United States, she has entertained, and now entertains, an earnest, sincere and active desire to become a citizen of the United States.

The question before the court is whether, under the foregoing facts, petitioner is entitled to admission to citizenship within the provisions of the Immigration and Nationality Act, applicable to "any person whose spouse is a citizen of the United States." The statutory section involved is Title 8 U.S.C.A., § 1430(a), whose language follows:

"§ 1430. Married persons

"(a) Any person whose spouse is a citizen of the United States may be naturalized upon compliance with all the requirements of this subchapter except the provisions of paragraph (1) of section 1427(a) of this title if such person immediately preceding the date of filing his petition for naturalization has resided continuously, after being lawfully admitted for permanent residence, within the United States for at least three years, and during the three years immediately preceding the date of filing his petition has been living in marital union with the citizen spouse, who has been a United States citizen during all of such period, and has been physically present in the United States for periods totaling at least half of that time and has resided within the State in which he filed his petition for at least six months."

The consequence of the foregoing statutory absolution of a petitioner to whom the quoted section is applicable, from compliance with paragraph (1) of section 1427(a) of Title 8 U.S. C.A., is to assure the reduction from five years to three years in the required period of continuous permanent residence immediately preceding the date of the filing of the petition.

Counsel for the petitioner and for the Immigration and Naturalization Service both cite, quote, and rely upon section 1430(a) supra. Admittedly, it provides the legislative framework within which petitioner has undertaken to proceed, and by which, in her current plight, her petition must be determined. Counsel have been unable, despite diligent study, to provide the court with judicial authority in construction and application of section 1430(a) directly, or even otherwise instructively, applicable to facts of the nature here involved. Nor has the court's research been any more fruitful. The factual record before the court appears to be unusual, although the possibility of its occurrence is fairly obvious.

The court readily and frankly acknowledges its wish that it might properly grant the petitioner's prayer for admission to citizenship. On the score of merit, she deserves well. She is personally and morally worthy of favorable consideration. Beyond question, she would be a creditable citizen of the United States.

But in the face of the statute, supra, which has to be administered, the court is persuaded that the petitioner is not now a person within the reach of that statute.

By Title 8 U.S.C.A. § 1101(a), the term "naturalization" is defined as meaning "the conferring of nationality of a state upon a person after birth, by any means whatsoever." That, the court thinks, has application broadly to the whole process of the quest and acquisition of citizenship, but chiefly and especially to the final judicial act whereby the applicant is accepted, and admitted to the taking of the oath of allegiance.

He or she must then be within the beneficial provisions of the statute. Admittedly not directly pertinent, yet not entirely irrelevant in the present setting, is Title 8 U.S.C.A. § 1101(a) (39), whereby the term "unmarried", "when used in reference to any individual as of any time," is defined as meaning, "an individual who at such time is not married, whether or not previously married."

From the foregoing factual recital, it is made clear that when, on August 14, 1959, petitioner filed her petition for naturalization, she came clearly within the provisions of Title 8 U.S.C.A. § 1430(a). She was then the spouse of Lee F. Noland, a native born citizen of the United States, with whom she had lived in marital union in the United States continuously for more than three years. Actually, she continued to be within the provisions of section 1430(a) until and shortly after a date once set for hearing on her petition, when such hearing was continued on account of her inability theretofore to produce a supportive showing of good moral character in respect of a brief period of her residence in the United States. Shortly after that proposed hearing date, the Immigration and Naturalization Service waived the showing whose difficulty of production had thus been encountered. Thereupon, hearing upon her petition was reset for November 19, 1959, and on November 3, 1959 she received notice by letter of such resetting. But thereafter, on November 9, 1959, thus ten days before the then pending hearing date, Lee F. Noland died. Therefore, on November 19, 1959, when the time for the rescheduled hearing arrived, petitioner was no longer the spouse of a citizen of the United States, or of anyone else, but was a widow.

The hearing set for November 19, 1959, was not then held but was continued indefinitely. It was actually held on May 24, 1960, and in further implementation of it the stipulation already mentioned was executed May 31, 1960, approved by the court June 1, 1960, and filed herein June 1, 1960. Meanwhile, however, and on February 14, 1960, petitioner had married Roy A. Noland, brother of her deceased husband. She has since been, and is now, the spouse of Roy A. Noland, who is also a native born citizen of the United States.

In the setting thus arising and existing, counsel for petitioner earnestly contends that she is within the reach of Title 8 U.S.C.A. § 1430(a). He argues that when she filed her petition for naturalization, she was the spouse of a citizen of the United States, Lee F. Noland, with whom she had lived in marital union for more than three years immediately theretofore; and that, now, when the petition has come finally on for ruling, she is again the spouse of a citizen of the United States, Roy A. Noland. And he contends finally that, upon the facts declared in the last preceding sentence, she is entitled to be admitted to citizenship, and that it does not matter that her current husband is a man altogether different from, though a brother of, her former spouse.

The court is unable to agree with the suggested reasoning. It seems clearly to be out of harmony with the thought of Title 8 U.S.C.A. § 1430(a). That section in its entirety presupposes that the spouse upon whose citizenship shall rest the right to file a petition after only three years of residence, and the spouse on whose citizenship an order finally granting the petition shall depend, shall be the same person. Note in this connection the phrase, "the citizen spouse," which employs the definite article, thus describing one person. But sound reason also underlies that construction of the section. The identity and character of the citizen spouse are not at all irrelevant to, but matter considerably in connection with, the good moral character and national loyalty of the petitioner who is married to such spouse. That is inescapably true. And section 1430(a) manifestly contemplates a situation in which, from the filing of the petition for citizenship (as well as during at least

three years theretofore) until final decree, the petitioner shall be the spouse of the same citizen husband or wife.

 If it be thought that the view thus expressed is narrow and on this occasion results in a harsh consequence, that position should be addressed to the Congress of the United States. The judiciary may not prudently or properly, even to relieve against the sternness of the law, either amend the statute or accomplish the same result by construction —or misconstruction—however benevolently intended.

An order is being made and given denying and dismissing the petition of the petitioner.