**In re Petition for Naturalization of Maria HANIATAKIS.**

**United States of America, Appellant.**

**No. 15765.**

United States Court of Appeals Third Circuit.

Submitted Oct. 31, 1966.

Argued April 18, 1967.

Decided April 28, 1967.

Luke E. White, Regional Counsel, U. S. Dept. of Justice, Immigration and Naturalization Service, Richmond, Va., Gustave Diamond, U. S. Atty., Thomas A. Daley, Asst. U. S. Atty., Pittsburgh, Pa., for appellant.

No appearance for petitioner.

Before GANEY, SMITH and FREEDMAN, Circuit Judges.

## OPINION OF THE COURT

FREEDMAN, Circuit Judge.

This is an appeal by the United States from an order granting a petition for naturalization. The appellee, whose petition was granted by the court below, has presented no argument to us, although we had sought to have her present her views.

Petitioner is a twenty-two year old native of Greece who has been a lawful permanent resident of the United States since June 4, 1956. In 1964, she applied for naturalization in her maiden name in the District Court for the Western District of Pennsylvania. The standard procedure, which she followed, required her first to present a written application to file a petition for naturalization and later to be examined under oath in regard to it, after which she swore to the application as corrected by the hearing examiner, and finally to file the verified petition itself.[1] In her written application of June 9, 1964, again during her oral examination under oath by the hearing examiner on June 17, and also in the petition for naturalization, filed on the same date, petitioner stated that she was unmarried. In fact, however, she had been married on May 18, 1964 to a Greek seaman who had been arrested for illegal entry into the United States on June 10, and had voluntarily returned to Greece on August 3. Petitioner had also falsely stated her prior places of residence, declaring both in her written application and her oral statements under oath that she had been a resident of Pennsylvania continuously since her entry into the United States, although for part of that time she had been a resident both of Indiana, where she had been married, and of Ohio.

After an investigation by the Immigration and Naturalization Service had revealed the fact of her marriage, a further preliminary examination was held at which petitioner acknowledged the falsity of her statement that she was unmarried. She explained that she had concealed her marriage out of fear that her naturalization would be held up for five more years if the fact of her marriage to another alien had been revealed. Her explanation makes her conduct all the more tragic, for the Immigration and Naturalization Service declares that her marriage to another alien would not have affected her application.

As a result of her testimony the hearing examiner concluded that petitioner had testified falsely to obtain benefits under the Immigration and Nationality Act,[2] and that she was consequently ineligible for naturalization, because she lacked the "good moral character" required by the Act for admission to citizenship. The District Court, however, granted the petition for naturalization in petitioner's married name, feeling bound to follow the decision of another judge of the same court in Petition for Naturalization of Sotos, 221 F.Supp. 145 (W.D.Pa.1963). It concluded that petitioner's false testimony did not affirmatively demonstrate the absence of "good moral character," since her misrepresentations were not material and the facts concealed would not themselves have been a barrier to her naturalization. 246 F.Supp. 545 (W.D.Pa.1965). The United States appeals from this ruling.

Section 316(a) (3) of the Immigration and Nationality Act (8 U.S.C. § 1427(a) (3)) provides that no person shall be naturalized unless, *inter alia*, he "has been and still is a person of good moral character" during the five-year period immediately preceding the date of filing of his petition for naturalization and the period thereafter until admission to citizenship. Section 101(f) of the Act (8 U.S.C. § 1101(f)), specifies a number of instances in which an applicant shall not be regarded to be of good moral character. Among those is the case of "one

---

1. See 8 C.F.R. § 332.11(b).

2. Act of June 27, 1952, 8 U.S.C. § 1101 et seq.

who has given false testimony for the purpose of obtaining any benefits under this chapter[3]." This section is mandatory in its terms. Bufalino v. Holland, 277 F.2d 270, 276 (3 Cir. 1960), cert. denied, 364 U.S. 863, 81 S.Ct. 103, 5 L.Ed.2d 85 (1960).

■ Petitioner's false answers were given both in the written application and in the petition for naturalization. Were this all, we would be required to determine whether false statements in applications or other written documents sworn to before an officer duly authorized to administer oaths would constitute "false testimony," which the statute makes conclusive proof of lack of good moral character. See Sharaiha v. Hoy, 169 F.Supp. 598 (S.D.Cal.1959); Matter of L— D— E—, 8 I & N 399 (1959), overruling Matter of Z—, 5 I & N 514 (1953); cf. Ensign v. Commonwealth of Pennsylvania, 227 U.S. 592, 599, 33 S.Ct. 321, 57 L.Ed. 658 (1913). The same false statements, however, were given orally as testimony at the preliminary investigation, and this brings the case clearly within the proscription of the statute. See Matter of G— L— T—, 8 I & N 403 (1959). The remaining question, therefore, is whether we should narrow the plain words of the statute and read into it an exception which would distinguish between material and immaterial matters in the giving of false testimony.

The federal courts have consistently refused to draw a distinction between materiality and immateriality of false testimony in cases where such a distinction would have had clear application. See Berenyi v. District Director, 385 U.S. 630, 87 S.Ct. 666, 17 L.Ed.2d 656 (1967); Stevens v. United States, 190 F.2d 880

(7 Cir. 1951); Del Guercio v. Pupko, 160 F.2d 799 (9 Cir. 1947). The statute is not concerned with the significance or materiality of a particular question, but rather, as the Supreme Court has recently indicated in Berenyi v. District Director, intends that naturalization should be denied to one who gives false testimony to facilitate naturalization. Id. 385 U.S. at 637, 87 S.Ct. 666.[4]

■ The reason for denying naturalization whenever false testimony is given in an attempt to gain it goes beyond a judgment that one who gives false testimony to deceive the government is by that fact unworthy of the privileges of citizenship; it is also based on the practical ground that a false answer to a query which on its face appears innocuous may effectively cut off a line of inquiry which might have revealed further facts bearing on the petitioner's eligibility for citizenship. Having asked a question which it deems significant to determine the qualifications of one seeking citizenship, the government is entitled to full disclosure. Berenyi v. District Director, supra at 638, 87 S.Ct. 666. See also United States v. Montalbano, 236 F.2d 757, 759–760 (3 Cir. 1956), cert. denied, sub nom. Genovese v. United States, 352 U.S. 952, 77 S.Ct. 327, 1 L.Ed.2d 244 (1956), involving revocation of citizenship. Indeed, the contention that the misrepresentations made here were immaterial is quite misleading, for the failure to give truthful answers regarding marital status has been deemed a "material fact" under § 340(a) of the Act (8 U.S.C. § 1451(a)), which permits the more drastic action of cancellation of naturalization where it has been "procured by concealment of a material fact

---

3. Section 101(f) provides: "For the purposes of this chapter—
"No person shall be regarded as, or found to be, a person of good moral character who, during the period for which good moral character is required to be established is, or was—
* * * * *
"(6) one who has given false testimony for the purposes of obtaining any benefits under this chapter * * *."

4. Compare § 340(a) of the Act (8 U.S.C. § 1451(a)), allowing revocation of naturalization if procured by concealment of a material fact or by willful misrepresentation and § 212(a) (19) (8 U.S.C. § 1182 (a) (19)), which makes an alien ineligible for a visa and for admission to the United States if he has willfully misrepresented a material fact in attempting to procure a visa or other documentation.

or by willful misrepresentation." See, e. g., United States v. D'Agostino, 338 F.2d 490, 491 (2 Cir. 1964).

Both the court below and the court in Petition for Naturalization of Sotos, 221 F.Supp. 145 (W.D.Pa.1963), relied upon Chaunt v. United States, 364 U.S. 350, 81 S.Ct. 147, 5 L.Ed.2d 120 (1960), in concluding that false testimony given to facilitate naturalization does not bar naturalization unless the concealed matter itself would bar it.[5] There the Supreme Court refused to revoke and set aside the naturalization twenty years before of an American citizen even though he had failed to reveal, as then required by the naturalization form, that he had previously been arrested. Although the Court's decision in *Chaunt* rested upon the immateriality of the false testimony, this does not help the petitioner here. To begin with, the provision of the Act involved in *Chaunt*, § 340(a) (8 U.S.C. § 1451(a)), specifically required that the fact concealed be "material." Moreover, in *Chaunt* the government attempted to withdraw the privileges of citizenship from one who had already been admitted to their benefits. What is involved here, on the other hand, is the decision whether the petitioner should be admitted to the benefits of that citizenship. Much turns on this distinction, since the immigration law historically has chosen to afford greater protections to those who have been admitted to citizenship. Thus, the Supreme Court recently declared in the *Berenyi* case, supra, 385 U.S. at 636–637, 87 S.Ct. at 610:

> "When the Government seeks to strip a person of citizenship already acquired, or deport a resident alien and send him from our shores, it carries the heavy burden of proving its case by 'clear, unequivocal, and convincing evidence.' But when an alien seeks to obtain the privileges and benefits of citizenship, the shoe is on the other foot. He is the moving party, affirmatively asking the Government to endow him with all the advantages of citizenship. Because that status, once granted, cannot lightly be taken away, the Government has a strong and legitimate interest in ensuring that only qualified persons are granted citizenship. For these reasons, it has been universally accepted that the burden is on the alien applicant to show his eligibility for citizenship in every respect. This Court has often stated that doubts 'should be resolved in favor of the United States and against the claimant.' E. g., United States v. Macintosh, 283 U.S. 605, 626 [51 S.Ct. 570, 75 L.Ed. 1302]."

Falling as she does within the class of those seeking citizenship, petitioner was obliged to prove her suitability for it. This, unfortunately, she has not done.

The judgment of the district court will be reversed.

---

5. See also United States v. Kessler, 213 F.2d 53 (3 Cir. 1954).