**In the Matter of the Petition for Naturalization of YAO QUINN LEE.**

**YAO QUINN LEE, Petitioner-Appellant,**

v.

**UNITED STATES of America, Respondent-Appellee.**

**No. 654, Docket 72-2351.**

United States Court of Appeals, Second Circuit.

Argued March 29, 1973.

Decided June 15, 1973.

Sanford Jay Rosen, American Civil Liberties Union Foundation, New York

City (Melvin L. Wulf and Joel M. Gora, New York City, on the brief), for petitioner-appellant.

Stanley H. Wallenstein, Sp. Asst. U. S. Atty. (Whitney North Seymour, Jr., U. S. Atty., S. D. N. Y., and Joseph P. Marro, Sp. Asst. U. S. Atty., on the brief), for respondent-appellee.

Before LUMBARD and FRIENDLY, Circuit Judges, and THOMSEN, District Judge.*

LUMBARD, Circuit Judge:

Yao Quinn Lee appeals from an order of the Southern District, entered on October 4, 1972, denying his petition for naturalization. We vacate the judgment below and remand to the district court with a direction to dismiss.

Petitioner was born in Hong Kong in 1942, and has resided in the United States continuously since 1949. He was lawfully admitted for permanent residence on May 8, 1967. On April 6, 1971, he filed a petition for naturalization under section 319(a) of the Immigration and Nationality Act (the "Act"), 8 U.S. C. § 1430(a).[1] This section provides for naturalization after three years of permanent residence, instead of the five year requirement of section 316(a)(1), 8 U.S.C. § 1427(a)(1), for any applicant whose spouse is a United States citizen.

At the final hearing on October 4, 1972, the Immigration and Naturalization Service (the "Service"), recommended that Lee's petition be denied because (1) he had given false testimony, (2) he had committed adultery, and (3) he was unwilling to take the full oath of allegiance to the United States without qualification or mental reservation.[2] Judge Pollack did not find it necessary to pass on the Service's third contention because he found that Lee had given false testimony in support of his petition and that he had committed adultery during the period in which his petition was pending. Judge Pollack therefore denied the petition, finding that Lee was not "a person of good moral character" as required by section 316(a)(3) of the Act, 8 U.S.C. § 1427(a)(3).[3]

---

* Senior District Judge of the District of Maryland, sitting by designation.

1. § 1430. Married persons and employees of certain nonprofit organizations.

(a) Any person whose spouse is a citizen of the United States may be naturalized upon compliance with all the requirements of this subchapter except the provisions of paragraph (1) of section 1427(a) of this title if such person immediately preceding the date of filing his petition for naturalization has resided continuously, after being lawfully admitted for permanent residence, within the United States for at least three years, and during the three years immediately preceding the date of filing his petition has been living in marital union with the citizen spouse, who has been a United States citizen during all of such period, and has been physically present in the United States for periods totaling at least half of that time and has resided within the State in which he filed his petition for at least six months.

2. An applicant for naturalization is required by section 337(a) of the Act, 8 U.S.C. § 1448(a), to take an oath of renunciation and allegiance to the United States before being admitted to citizenship.

3. Except for the special residency requirements of section 319(a), an applicant for naturalization under this section still has to satisfy the other requirements of the Act. See 8 U.S.C. § 1430 (a). Section 316(a)(3) states that an applicant must be "a person of good moral character." 8 U.S.C. § 1427(a) (3). Section 1101(f) further defines the term "good moral character" in the following way:

"For the purposes of this chapter— No person shall be regarded as, or found to be, a person of good moral character who, during the period for which good moral character is required to be established, is, or was—

.    .    .    .    .

(2) one who during such period has committed adultery;

.    .    .    .    .

(6) one who has given false testimony for the purpose of obtaining any benefits under this chapter;

.    .    .    .    ."

8 U.S.C. § 1101(f).

On this appeal petitioner alleges several errors in the proceedings below and asserts that he was fully qualified for citizenship at the final hearing and that his petition should have been granted. However, petitioner has informed us, and the Service does not dispute the fact, that on January 15, 1973, several months after entry of the judgment below, petitioner's wife secured a final decree of divorce.[4] Section 319(a) of the Act states that "[a]ny person whose spouse is a citizen of the United States may be naturalized . . ." under the special three year residency provisions. Because petitioner is not currently married to an American citizen, he no longer falls within the literal purview of section 319(a) and he is ineligible for naturalization under that section. Petitioner's appeal has therefore become moot, and, in the absence of any "case or controversy," this Court is without jurisdiction over the subject matter. Kerrigan v. Boucher, 450 F.2d 487 (2 Cir. 1971).

To avoid this result, petitioner contends that the only requirement of marriage to a United States citizen contained in section 319(a) is the statement that an applicant must "during the three years immediately preceding the date of filing his petition [have] been living in marital union with the citizen spouse." According to petitioner, the purpose of section 319(a) was to make naturalization available after a shorter period of time to those applicants who, because they had lived in close association with a citizen spouse for three years, had been able to absorb the basic concepts of citizenship more quickly than those not similarly situated. See Petition for Naturalization of Kostas, 169 F.Supp. 77, 78 (D.Del.1958); Letter from Hon. Ramsey Clark to Hon. Emanuel Celler dated July 11, 1967, appended to S.Rep. No. 1303, 90th Cong., 2nd Sess. (1968). Petitioner argues that it would be contrary to the spirit and intention of section 319(a) to deny citizenship to an applicant who has met the three year marriage requirement at the time of filing his petition simply because he was no longer married to his citizen spouse at the time of naturalization.

The difficulty with this approach is two-fold. First, the legislative history of Section 319(a) provides absolutely no support to petitioner's view, since it is entirely devoid of any reference to the intention of Congress in enacting this section. See 1952 U.S.Code Cong. & Ad.News, p. 1737; In re Petition of Zimmerman, 52 Misc.2d 502, 276 N.Y.S. 2d 46 (Sup.Ct. 1966). Second, the statutory language itself, contrary to petitioner's contention, quite plainly requires marriage to a citizen spouse not only for three years prior to filing the petition, but also at the time of naturalization. See In re Naturalization of Noland, 185 F.Supp. 948 (D.Neb.1960); In re Petition of Zimmerman, supra. In effect, what petitioner is asking us to do is to read out of the statute the first clause of section 319(a), and this we decline to do. "[S]ection [319(a)] manifestly contemplates a situation in which, from the filing of the petition for citizenship (as well as during at least three years theretofore) until final decree, the petitioner shall be the spouse of the same citizen husband of wife." In re Naturalization of Noland, supra, 185 F. Supp. at 952–953.

Alternatively, petitioner contends that section 319(a) only requires marriage to a citizen spouse up to the time of the final hearing. The statute states that "any person whose spouse is a citizen of the United States may be naturalized . . ." in three years upon compliance with the requirements of section 319(a). Noting that naturalization normally occurs at the final hearing, petitioner argues that what the statute actually contemplates is marriage to a citizen spouse at the final hearing rather than at the date of naturalization. Since petitioner met this requirement,

---

4. A copy of the final decree of divorce was filed with the Clerk of the Court of Appeals for the Second Circuit.

he claims that he remains eligible for citizenship under section 319(a) despite his subsequent divorce. Petitioner also argues that it would be unfair to read the statute to require marriage to a citizen spouse at the date of naturalization because an applicant who was erroneously denied citizenship at the final hearing, as petitioner claims that he was, but was divorced before his denial could be reversed at the appellate level would no longer be able to qualify for citizenship.

Assuming for the moment that petitioner's initial premise that he was erroneously denied citizenship at the final hearing is correct, which we do not believe to be the case, the short answer to his contention is again that it is completely contrary to the clear language of the statute. The final hearing and the act of naturalization are two distinct events, though they often occur in close proximity. In enacting section 319(a) Congress was free to choose either one as the point up to which an applicant would be required to be married to his citizen spouse. Congress chose the date of naturalization and we are bound by that choice. As to possible unfairness, it must be remembered that even though petitioner no longer qualifies for citizenship under section 319(a), he is still free to reapply for citizenship under the normal five year provision of section 316(a), 8 U.S.C. § 1427(a).[5] Since we vacate the judgment below and remand to the district court with a direction to dismiss in accordance with United States v. Munsingwear, Inc., 340 U.S. 36, 71 S.Ct. 104, 95 L.Ed. 36 (1950), in any subsequent judicial proceedings under section 316(a) the findings of the district court in this case will have no collateral estoppel effect.

Moreover, if we were to rule on the merits of petitioner's case, we would affirm the denial of the petition on the basis of the district court's finding that petitioner gave false testimony to facilitate his naturalization. 8 U.S.C. § 1101(f)(6). In August, 1971, petitioner's wife moved out of their apartment because she and petitioner were not "getting along." Although she may have returned on various occasions to pick up her mail and clothes, she never again resumed living with petitioner, and sometime during the summer of 1972 she instituted divorce proceedings. At the preliminary examination held on January 5, 1972, some five months after petitioner's wife had left him, petitioner was asked, "After the date you filed your Petition for Naturalization, have you married, been widowed, separated or divorced?" He responded "No ma'am." He was then asked "are you still living with your wife?" to which he answered "Yes, ma'am."

In view of the fact that petitioner's wife had left him five months before, the district court was fully warranted in finding that petitioner's affirmative answer to the question whether he was still living with his wife was knowingly false. It is well settled that in a naturalization proceeding the petitioner has the burden of proving his good moral character, Berenyi v. District Director, 385 U.S. 630, 637, 87 S.Ct. 666, 17 L.Ed.2d 656 (1967); Tieri v. Immigration & Naturalization Service, 457 F.2d 391, 393 (2d Cir. 1972), and any doubts are to be resolved against him, United States v. Manzi, 276 U.S. 463, 467, 48 S.Ct. 328, 72 L.Ed. 654 (1928); United States v. Macintosh, 283 U.S. 605, 626, 51 S.Ct. 570, 75 L.Ed. 1302 (1931), overruled in other respects, Girouard v. United States, 328 U.S. 61, 66 S.Ct. 826, 90 L.Ed. 1084 (1946). Here the evidence of falsehood was clear and it provided a substantial basis for the finding of the district court that pe-

---

5. We cannot agree with petitioner's argument that this court should treat his petition as if it had been filed pursuant to section 316(a). While it appears that petitioner may now have resided as a permanent resident alien for over 5 years, he had not, as is required by section 316(a), resided as a permanent resident alien for 5 years at the time his petition was first filed.

titioner failed to sustain his burden of proof.

Petitioner suggests, however, that his falsehood, if any, was not material to the approval of his petition and therefore that it did not violate the statute. It is true, as petitioner suggests, that if he had admitted at the proper time that he was no longer living with his wife, he could not have been denied naturalization on that basis alone.[6] However, whether the specific information withheld would have resulted in automatic denial of the petition is not the only factor bearing on materiality. See In re Petition of Kovacs, 2 Cir., 476 F.2d 843 (April 25, 1973). By giving false testimony during the preliminary examination petitioner may have completely closed off legitimate avenues of questioning and investigation which might have led to discovery of information concerning other aspects of petitioner's character which were pertinent to petitioner's eligibility for citizenship. Berenyi v. District Director, *supra*, 385 U. S., at 638, 87 S.Ct. 666; In re Petition of Haniatakis, 376 F.2d 728, 730 (3d Cir. 1967). In foreclosing such inquiry petitioner's false testimony was certainly material. As the Third Circuit has said, "[h]aving asked a question which it deems significant to determine the qualifications of one seeking citizenship, the government is entitled to full disclosure." In re Petition of Haniatakis, *supra*, at 730. See In re Petition of Kovacs, *supra*.

The remaining question is whether petitioner's false response was given "for the purpose of obtaining any benefits under [the Act]." 8 U.S.C. § 1101(f)(6). In light of the fact that petitioner was seeking the privilege of citizenship and in doing so knowingly provided the Service with material misinformation, the district court could properly conclude, despite petitioner's testimony to the contrary, that petitioner had the necessary intent. This is especially so

since the question eliciting the false response dealt with petitioner's marital status. An applicant unfamiliar with the statute might well be unwilling to reveal the break-up of his marriage under the mistaken view that because marriage to a citizen spouse is a prerequisite to filing under section 319(a), the continued success of the marriage would also be important to the ultimate success of the petition for naturalization.

Vacated and remanded with a direction to dismiss.

---

6. Between the date of the filing of the petition and the date of naturalization, section 319(a) only requires that a le-

gally valid marriage remain in existence. See In re Petition of Olan, 257 F.Supp. 884 (S.D.Cal.1966).