**Syed Junaid MUKARRAM**

v.

**Gregory L. COLLETT, et al.**

**Civil Action No. WMN 08–1672.**

United States District Court, D. Maryland.

May 5, 2009.

Danielle LC Beach–Oswald, Beach–Oswald Immigration Law Associates PC, Washington, DC, for Plaintiff.

Benjamin J. Zeitlin, United States Department of Justice, Washington, DC, Thomas H. Barnard, Office of the U.S. Attorney, Baltimore, MD, for Defendants.

### MEMORANDUM

WILLIAM M. NICKERSON, District Judge.

Pending before this Court is a Motion to Dismiss or, in the Alternative, for Summary Judgment filed by: Respondents Gregory L. Collett, District Director for Services for the United States Citizenship and Immigration Service (USCIS); the USCIS, Michael Chertoff, the Secretary of the Department of Homeland Security (DHS); and the DHS. Paper No. 21. The motion is ripe for decision. Upon review

of the motion, its related documents and the applicable case law, this Court finds that no hearing is necessary (Local Rule 105.6) and that Defendants' motion will be granted.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Petitioner Syed J. Mukarram is a native and citizen of India. He has been a lawful permanent resident of the United States since May 2, 1996. On August 16, 2005, Mukarram filed an application for naturalization (Form N–400) with USCIS. On June 5, 2006, USCIS issued a decision denying Mukarram's Form N–400, finding that Mukarram had provided false testimony to the USCIS during the statutory period.

Mukarram did not agree with this ruling, and through counsel, filed a request for a hearing before an immigration officer pursuant to section 336 of the Immigration and Nationality Act (INA). On February 29, 2008, Respondent Collett affirmed the USCIS' decision denying Mukarram's naturalization application, again based on a finding that Mukarram had provided false testimony to the USCIS during the statutory period.

On June 25, 2008, Mukarram filed a petition for a de novo review of the US-CIS's denial of his naturalization application in this Court, pursuant to 8 U.S.C. § 1421(c). In response, the government filed its motion to dismiss, or in the alternative, for summary judgment.

## II. LEGAL STANDARD

Under 8 U.S.C. § 1421(c) and 8 C.F.R. § 336.9(b), a person whose application for naturalization is denied after a hearing before an immigration officer may seek review of the denial in the United States District Court for the district in which the person resides. "The review will be de novo, and the court will make its own findings of fact and conclusions of law." 8 C.F.R. § 336.9(c).

The Court's review is governed by the Administrative Procedure Act. *See* 8 U.S.C. § 1421(c) (stating that the hearing shall be "in accordance with chapter 7 of Title 5"). Accordingly, the Court is confined to the administrative record, or those parts of it cited by the parties. 5 U.S.C. § 706; *see also Etape v. Chertoff*, 497 F.3d 379, 393–94 (4th Cir.2007) (finding that if naturalization application is denied, applicant may receive "de novo review before the district court on a fully developed administrative record").

An applicant for naturalization "bear[s] the burden of establishing by a preponderance of the evidence that he or she meets all of the requirements of naturalization." 8 C.F.R. § 316.2(b). Under 8 U.S.C. § 1427(a), an applicant for naturalization must meet the following requirements

> [n]o person ... shall be naturalized unless such applicant, (1) immediately preceding the date of filing his application for naturalization has resided continuously, after being lawfully admitted for permanent residence, within the United States for at least five years ..., (2) has resided continuously within the United States from the date of the application up to the time of admission to citizenship, and (3) during all the periods referred to in this subsection has been and still is a person of good moral character, attached to the principles of the Constitution of the United States, and well disposed to the good order and happiness of the United States.

Certain classes of individuals are barred from establishing the good moral character requirement of § 1427(a). *Id.* at § 1101(f), 8 C.F.R. § 316.10(b)(1)-(2). Additionally, "[t]he fact that any person is not within any of the [enumerated classes] shall not preclude a finding that for other reasons

[he] is or was not of good moral character." 8 U.S.C. § 1101(f). An applicant's moral character is evaluated "on a case-by-case basis taking into account . . . the standards of the average citizen in the community of residence." 8 C.F.R. § 316.10(a)(2).

█ The statutory period for assessing the moral character of a naturalization applicant begins five years immediately preceding the date the application is filed. 8 U.S.C. § 1427(a). But 8 U.S.C. § 1427(e) provides that "the applicant's conduct and acts at any time prior to that period" may be considered "[i]n determining whether the applicant has sustained the burden of establishing good moral character." More specifically, an applicant's "conduct and acts" prior to the statutory period may be considered for purposes of the moral character determination "if the conduct of the applicant during the statutory period does not reflect that there has been reform of character from an earlier period or if the earlier conduct and acts appear relevant to a determination of the applicant's present moral character." 8 C.F.R. § 316.10(a)(2). Therefore, an applicant's conduct prior to the statutory period is relevant only to the extent that it reflects on his or her moral character within the statutory period.

### III. DISCUSSION

█ Under 8 C.F.R. § 316.10(b)(2)(vi), "an applicant shall be found to lack good moral character" if during the statutory period, the applicant has "given false testimony to obtain any benefit from the Act, if the testimony was made under oath or affirmation with the intent to obtain an immigration benefit; this prohibition applies regardless of whether the information provided in the false testimony was material. . . ." Relying on this statutory provision, the government outlines two categories of false or misleading statements by Mukarram that it believes require this

Court to rule in its favor: those made in support of Petitions for Non–Immigrant Workers for other individuals and those on his own immigration documents and in his immigration interviews.

█ Petitions for Non-immigrant workers, commonly referred to as I–129s, require a certification from an employer showing, among other things, that the applicant has employment and is properly qualified for employment. Thus, some employer must usually sponsor the applicant seeking non-immigrant work status. In this case, the record reveals that Mukarram, in his role as president of two corporations—Micro Logic Computers, Inc. and Pro Micro Computers, sponsored individuals on at least six occasions. *See* Record at 139–40, 150–52 (I–129 of Mir R. Ali filed in 2000); Record at 156–60 (I–129 of Mushtaq Ahmed filed in 2002); Record at 171–72 (I–129 of Mohammed Saijad Ali Junaidi filed in 1997); Record at 177–79 (I–129 of Rahial Mohiuddin filed in 1998); Record at 187–89 (I–129 of Mohammed A. Junaidi filed in 1998); Record at 199–201 (I–129 of Mohammed R. Shabaz filed in 1998). The government alleges that some of the information contained in these applications was fraudulent, and thus, Mukarram must be found to lack good moral character.

The government alleges that Mukarram falsely asserted that Micro Logic and Pro Micro had locations in California and Maryland—locations where Mukarram claimed the beneficiaries of the I–129s would work. The papers submitted in support of the I–129s sponsored by Mukarram, as president of Micro Logic and Pro Micro, gave addresses for both companies in California (hereinafter referred to as "Eastridge Mall location") and Maryland. Neither company, however, had ever reported wages to the State of California or the State of Maryland. *See* Rec-

ord at 146–49, 163–66, 206. Additionally, the United States Immigration and Customs Enforcement (ICE) conducted surveillance at the Eastridge Mall location and found it was under construction and unoccupied. *Id.* The General Manager of the mall had no recollection of a company named Micro Logic Computer, Inc., operating at the mall since June 2000.

█ Mukarram counters these facts by alleging that there was an oral agreement with a men's clothing store in the Eastridge Mall allowing Micro Logic to use a portion of the clothing store *if* Micro Logic's business ever developed in the Silicon Valley. Thus, Mukarram asserts, the Eastridge Mall location was not actually the site of the business, but a location for "prospective" business. The record indicates, however, that this is a manufactured argument for the purposes of opposing the government's motion and that it directly contradicts previous representations by Mukarram. For example, Mukarram used Micro Logic letterhead to write letters of support for the I–129s he sponsored. This letterhead included the Eastridge Mall address as a branch location, with no indication that it was a prospective location only. *See* Record at 150–52.

Mukarram supports his assertion that he had an oral agreement to use a part of a men's clothing store with a letter signed by Zehra Sultana. Opp'n, Ex. 3. This letter, however, is not in the form of an affidavit and is not made pursuant to 28 U.S.C. § 1746 and thus provides little weight. Additionally, it appears that Zehra Sultana is associated with Mukarram in numerous ways—leading the Court to question the independence of the representations. One of the I–129s Mukarram sub-

mitted includes the name Husna Sultana and Mukarram's ex-wife is Nasreen Sultana. Moreover, Zehra Sultana shares an address with several of the I–129 applicants which were sponsored by Mukarram's companies. *See* Record at 15, 52 (showing Mir Ali and Mohammed Juaidi sharing the address of 34765 Klondike Drive with Zehra Sultana). Finally, the statements in Sultana's letter contradict some of the information in the record. For example, the letter states that Micro Logic was located first at 154 Eastridge Mall and later moved to 384 Eastridge Mall. Opp'n, The record indicates that Micro Logic actually only used Eastridge Mall address. The record also indicates that Eastridge Mall address was used prior to, not after, the 154 address, and was used by Pro Micro, not Micro Logic. *Compare* Record at 139 (Micro Logic listed at 154 Eastridge in 2000) *with* Record at 177 (Pro Micro listed at 384 Eastridge in 1998) *and* 187 (same). The letter, therefore, does little to support Mukarram's new argument that the Eastridge Mall location was merely a "prospective" location.[1]

In addition to allegations of misrepresentations on the I129 applications, the government contends that Mukarram gave false or misleading information during his own naturalization interview. Specifically, the government alleges that Mukarram's documentation and statements to USCIS regarding his work history and employment are misleading. As noted above, Mukarram signed and sponsored the I–129 applications on at least six occasions in his claimed capacity as president of either Micro Logic or Pro Micro. In his first Form N–400, however, Mukarram only indicated

---

1. The Court gives little credence to this piece of evidence for the additional reason that it was not a part of the underlying administrative record upon which this de novo review is based. *See Etape,* 497 F.3d at 393–94 (find- ing that if naturalization application is denied, applicant may receive "de novo review before the district court on a fully developed administrative record").

his association with Micro Logic, not Pro Micro. Additionally, in that N–400, Mukarram indicated that he was president of Micro Logic from 1996–1999. Record at 324. During his immigration interview Mukarram changed his statement again and stated that he was president of Micro Logic from 1998–2001. Record at 236. Finally, in Mukarram's second N–400, he did not indicate that he worked for either Micro Logic or Pro Micro. Instead, he stated that he worked for Columbia Computer Training Institute, which he listed as located at the same address as he used for Micro Logic. Record at 246. Mukarram offers nothing to clarify these apparent contradictions.

In addition to these discrepancies on Mukarram's N–400s and in the answers he gave in his interview, Mukarram also claimed on his N–400 that he never helped anyone enter the United States or try to enter the United States illegally and that he never gave false or misleading information to any U.S. government official. Record at 244–53. As noted above, the record indicates that Mukarram did present false or misleading information on the I–129s he submitted. This, the government alleges, is another example of Mukarram's false or misleading testimony.

■ Under 8 U.S.C. § 1101(f)(6) and 8 C.F.R. § 316.10(b)(2)(vi), a court is mandated to find anyone giving false testimony to obtain any benefit from the Immigration and Nationality Act to be lacking good moral character. *See In re Haniatakis,* 376 F.2d 728, 729 (3d Cir.1967) (finding § 1101(f) "mandatory" in its terms). Although some of the false or misleading statements described above may seem immaterial to whether Mukarram ultimately could be eligible for naturalization, the United States Supreme Court has found that § 1101(f)(6) does not distinguish between material and immaterial representations. *See Kungys v. United States,* 485 U.S. 759, 779–80, 108 S.Ct. 1537, 99 L.Ed.2d 839 (1988) (holding that § 1101(f)(6) "denominates a person to be of bad moral character on account of having given false testimony if he has told even the most immaterial of lies with the subjective intent of obtaining immigration or naturalization benefits"); *see also Haniatakis,* 376 F.2d at 729 (stating that the court "is not concerned with the significance of materiality of a particular question, but rather, as the Supreme Court recently indicated [ ], intends that naturalization should be denied to one who gives false testimony to facilitate naturalization") (internal citation omitted). Because it is clear that Mukarram made false or misleading statements, this Court must find that he cannot meet his burden of proving an element essential to his claim—that he is of good moral character—and thus, must grant the government's motion.[2]

## IV. CONCLUSION

For the foregoing reasons, the government's Motion to Dismiss or, in the Alternative, for Summary Judgment, will be granted. A separate order will issue.

2. This Court has highlighted only a few of the alleged misrepresentations made by Mukarram. Because *any* false testimony made to obtain any immigration benefit requires this Court to find that Mukarram lacks good moral character, a full recitation of the government's allegations is not necessary.