In the matter of the **NATURALIZATION OF Iryna Tytiana BARTKIW (nee Szerenga) as a citizen of the United States.**

**No. 216261.**

United States District Court
E. D. Pennsylvania.
Nov. 29, 1961.

Eugene E. Cole, Asst. District Director, Immigration & Naturalization Service, Philadelphia, Pa., for petitioner.

Charles V. Stoelker, Jr., Philadelphia, Pa., for respondent.

WOOD, District Judge.

1. Iryna Tytiana Bartkiw (nee Szerenga) filed her petition for naturalization, No. 216261, in the United States District Court for the Eastern District of Pennsylvania on May 10, 1960, in the name of Iryna Szerenga, she at that time being unmarried.

2. Iryna Szerenga came to this country on August 30, 1949, accompanied by her parents, sisters and brothers, as a displaced person from the Ukraine. She became twenty-one years of age on January 14, 1960. Her petition for naturalization was calendared for hearing by the Court on July 13, 1960, at which time she appeared before an interrogation officer of the Immigration and Naturalization Service.

She advised the Examiner at that time that she had been in Canada for several weeks prior thereto and had in the meantime married one Donald Bartkiw, a naturalized citizen of Canada.

3. They had become engaged in January of 1960 and were married on June 4, 1960, approximately six weeks prior to the above hearing. The Hearing Examiner approved her for citizenship and so advised the Court and she became a naturalized citizen by Order of the Court on July 13, 1960.

4. On August 10, 1960, respondent, having returned to Canada after the aforesaid hearing on July 13, 1960, applied for entry into the United States and it was then discovered that on or about June 13, 1960, she had applied to Canadian Immigration authorities for admission as a permanent resident.

Following the application to the Canadian authorities, she was given permanent residence status in Canada as of August 22, 1960.

5. When she made her application for permanent residence status on June 13, 1960, approximately one month before the naturalization proceedings in this Court, she was unaware of the legal implications involved and believed that in order to enter Canada with her husband it was necessary for her to make appli-

cation for permanent residence there. The Court finds as a fact that there was no fraudulent intent on the part of the respondent to deceive either the authorities of the United States or of Canada in this respect.

6. The facts concerning her application for permanent residence status in Canada, her marriage, and her residence having become known as aforesaid to the authorities of the Immigration and Naturalization Service, there was filed with the Court on August 11, 1960 the motion under consideration. Hearings were held on August 29, 1960, and October 9, 1961, to give the respondent an opportunity to present evidence, argument and briefs on her behalf relative to the issues involved.

7. The respondent has stated that it has always been her intention to be a resident and a citizen of the United States, but that has been thwarted due to her marriage and the fact that her husband's employment requires him to live in Canada. She still is desirous of becoming a United States citizen.

8. Her husband has testified that if it were possible for him to do so and his wife were a United States citizen, he would seek employment in the United States where they would reside.

### Discussion

The position of the Immigration and Naturalization Service in this case can be most succinctly stated as follows:

"* * * what we have here is an admission by this young lady that at the time she applied for citizenship she was engaged. Her fiance lived in Canada. She knew that she was going to go to Canada to live after she was married. She did in fact go to Canada to live after she was married. She has in fact resided in Canada since she was mar-

ried, which is contrary to the statement which she made in her petition, that she intended to reside permanently in the United States." (NT 26)

Although we have concluded that there was no fraud or intentional act to deceive in any way on the part of the respondent, the above brief statement of facts is warranted by the evidence before us.

■■ However, there are involved in the case two unusual legal problems. The Federal Rules of Civil Procedure, Rule 60(b), 28 U.S.C.A., authorize, *inter alia*, the Court to relieve a party or his legal representative from a final judgment under the following circumstances:

"On motion and upon such terms as are just, the court may relieve a party * * * from a final judgment * * * for the following reasons:

"(1) Mistake, inadvertence, surprise, or excusable neglect;

"(2) Newly discovered evidence * * *;

"(6) Any other reason justifying relief from the operation of the judgment."

The motion made was timely under the Rule. The Immigration and Naturalization Service further argues that under the terms of § 340(j) of the Immigration and Nationality Act of 1952, June 27, 1952, C. 477, T. III, Ch. 2, § 340, 66 Stat. 260, 8 U.S.C.A. § 1451(j), the Government may proceed by this method to reopen or vacate the judgment of naturalization.[1] Respondent, however, states that the general Savings Clause of the Act: namely, § 405, 8 U.S.C.A. § 1101, Note, p. 156, compels the dismissal of this motion since respondent had acquired rights when she came to this country which predated the terms of the 1952 Act and they could not be diminished by

---

1. 8 U.S.C.A. § 1451(j) reads as follows: "(j) Nothing contained in this section shall be regarded as limiting, denying, or restricting the power of any naturalization court, by or in which a person has been naturalized, to correct, reopen, alter, modify, or vacate its judgment or decree naturalizing such person, during the term of such court or within the time prescribed by the rules of procedure or statutes governing the jurisdiction of the court to take such action."

it. In support of respondent's counsel's position he cites United States v. Menasche, 348 U.S. 528, 75 S.Ct. 513, 99 L. Ed. 615 (1955); and Medalion v. United States, 2 Cir., 279 F.2d 162 (1960). This is an impressive argument, but on the facts of this case and the situation as it exists now, we think that the holdings in those cases are not in point. We do not consider that by entertaining this motion the "status," "condition," or "right in process of acquisition" preserved by § 405(a) have been lost or diminished. The procedural relief granted by Congress to the Immigration and Naturalization Service under § 340(j) of the Act we are convinced was placed in the Act by Congress not to reduce the basic rights of a prospective citizen, but rather to clarify or eliminate the problems created by the decision in Bindczyck v. Finucane, 342 U.S. 76, 79, 72 S.Ct. 130, 132, 96 L.Ed. 100 (1951), where the Supreme Court stated:

> "Due regard for § 338, including the history of its origin and for the nature of a judgment of naturalization * * * compels us to hold that § 338 is the exclusive procedure for canceling citizenship on the score of fraudulent or illegal procurement based on evidence outside the record."

It cannot be questioned that Congress had the power to grant the Immigration and Naturalization Service an additional method such as provided by § 340(j) to that formerly limited to proceedings under § 338 where it was necessary that the Government file a specific complaint and prove its case by clear, unequivocal and compelling evidence. On this question, therefore, we agree with the decision of District Judge Sugarman in Petition of Field, 117 F.Supp. 154 (S.D. N.Y.1953), wherein it was held that this remedy was available to the Government.

█ We come now to the second question, ably argued, as was the former one by counsel for respondent. There he states that § 316 of the Act [2] precludes the Government from reopening or vacating this judgment of naturalization. He argues in effect that at the time the young lady left the United States to go to Canada and marry her husband, and although she resided there until the date of the hearing here and immediately returned, that was not an abandonment of her residence in the United States. In support thereof, he cites United States v. Jorgenson, 6 Cir., 241 F. 412, 415 (1916). Although that case was decided before any of the acts here involved, he argues that the general rule therein stated is still effective: namely, when actual residence in the United States is once established such residence will not be interrupted by temporary absences from the United States provided there is no intention to change or abandon the domicile. However, the Act as to residence states:

> "The term 'residence' means the place of general abode; the place of general abode of a person means his principal, actual dwelling place in fact, without regard to intent. * * *" (Immigration and Nationality Act, § 101(a) (33), 8 U.S.C.A. § 1101(a) (33).

We, therefore, have the difficult situation where the respondent argues that she never intended to give up her residence

---

2. The Immigration and Nationality Act of 1952, § 316 (8 U.S.C.A. § 1427) provides in part:

"(a) No person, except as otherwise provided in this subchapter, shall be naturalized unless such petitioner * * * (2) has resided continuously within the United States from the date of the petition up to the time of admission to citizenship. * * *

"(b) Absence from the United States of more than six months but less than one year during the period for which continuous residence is required for admission to citizenship, immediately preceding the date of filing the petition for naturalization, or during the period between the date of filing the petition and the date of final hearing, shall break the continuity of such residence, unless the petitioner shall establish to the satisfaction of the court that he did not in fact abandon his residence in the United States during such period."

in the United States, whereas the Immigration and Naturalization Service says that she did acquire residence in Canada before the hearing, resumed it after the hearing on a permanent basis and whether or not she intended to do so is immaterial. The Immigration and Naturalization Service states that in her application, and as a basis for the judgment of naturalization, she stated that she intended to be a permanent resident of the United States for a period of five years. Since we are of the opinion that she has been a bona fide resident of Canada as described in the Act, with or without intent, we are compelled to reject the argument of the respondent. We find it impossible to conclude that this young woman, married, with her husband holding a responsible position in Canada where he was a citizen, and who thereafter maintained a home with him, did not intend to live in Canada as a resident. It may very well be, as stated in our findings of fact, that both she and her husband hoped that at some time in the future she would become a citizen of the United States; that he would obtain employment in the United States and that they would live here permanently as husband and wife. But, unfortunately for the position of the respondent, that is a hope for the future and not a present fact.

It is difficult, especially when the Court is impressed by the respondent and her husband, as well as the able argument of their counsel, to vacate the judgment of naturalization, and, temporarily at least, to deny her citizenship, but under the facts of this case we are compelled to conclude that, had all of the circumstances been known to the Examiner and to the Court at the time that she applied, the judgment of naturalization would not have been entered. As we have said before, we imply no insidious or improper motivation to the fact that these circumstances were unknown both to the Examiner and to the Court.

### Order

And now, to wit, this 29 day of November, 1961, it is hereby ordered that:

The judgment of naturalization in the United States District Court for the Eastern District of Pennsylvania is vacated, without prejudice to the respondent herein to proceed at any time to satisfy the requirements of the Immigration and Nationality Act and obtain citizenship in the United States: Nor is any record, testimony, argument or conclusions presented in this proceeding to militate against her obtaining citizenship should she make further application.