Petition of Azucena **BORTLE** to be Admitted a Citizen of the United States of America.

No. 426–P–35838.

United States District Court
District of Columbia.

June 29, 1965.

Ivan J. Shefferman, Washington, D. C., for petitioner.

Robert D. Oglesby, U. S. Naturalization Examiner, Immigration & Naturalization Service, for the United States.

MATTHEWS, District Judge.

On August 6, 1964 the United States through the Immigration and Naturalization Service filed a motion to reopen the order and judgment of naturalization of August 13, 1963 relative to Mrs. Azucena Bortle. Thereafter on September 23, 1964 the court granted the motion and restored Mrs. Bortle's petition for naturalization to a pending status for further determination on the merits of her qualifications for citizenship. This was done pursuant to Section 340 (j) of the Immigration and Nationality Act, 8 U.S.C. 1451(j), reading as follows:

> Nothing contained in this section shall be regarded as limiting, denying or restricting the power of any naturalization court, by or in which a person has been naturalized, to correct, reopen, alter, modify, or vacate its judgment or decree naturalizing such person, during the term of such court or within the time prescribed by the rules of procedure or statutes governing the jurisdiction of the court to take such action.

A hearing has now been held pursuant to the mentioned order of September 23, 1964.

A native and citizen of Colombia, South America, petitioner was married

at Bogota in that country on February 10, 1962 to Bruce Bortle, a citizen of the United States then employed in Bogota at the American Embassy. At the time of the lawful admission of Mrs. Bortle to the United States for permanent residence on May 2, 1963 she was 26 years of age and was accompanied by an infant son of the marriage.

Mrs. Bortle was naturalized on August 13, 1963 under Section 319(b) of the Immigration and Nationality Act, 8 U.S.C. 1430(b). This section permits the expeditious naturalization of an alien without requiring any specified period of residence or physical presence in the United States if that alien is married to a United States citizen who is in the employment of the Government of the United States and is regularly stationed abroad in such employment, provided the alien is in the United States at the time of naturalization and establishes an intention in good faith to take up residence within the United States immediately upon the termination of the employment abroad of the citizen spouse,[1] and provided the alien complies with all other requirements of the naturalization laws. One of such other requirements which must be met is the requirement in subdivision (a) of Section 319 that the alien spouse "immediately preceding the date of filing" of the petition for naturalization "has been living in marital union with the citizen spouse."

A provision of the Code of Federal Regulations also applicable to Mrs. Bortle reads in pertinent part as follows:

A person of the class described in Section 319(b) of the Immigration and Nationality Act shall establish an intention in good faith, upon naturalization, to reside abroad with the United States citizen spouse and to take up residence in the United States immediately upon the termination of the employment abroad of such spouse * * * 8 C.F.R. 319.2.

It is the contention of the Government that after Mrs. Bortle's naturalization it came to the attention of the Immigration and Naturalization Service that prior to her coming to the United States she and her husband jointly, through an attorney in Argentina, made arrangements to obtain a divorce in Mexico by proxy. It is the further contention of the Government that Mrs. Bortle was not living in marital union with her husband immediately preceding the date of the filing of her petition for naturalization; that she had no intention of rejoining her husband overseas, and that she was fully aware of these facts. According to the Government these facts, if known at the time Mrs. Bortle filed her petition and appeared for naturalization, would have precluded her naturalization, and the Immigration and Naturalization Service would have recommended to the court that her petition be denied.

■ This is not a denaturalization proceeding under Section 340(a) of the Immigration and Nationality Act, 8 U.S.C. 1451(a), where the burden rests on the Government to prove that the naturalized citizen obtained naturalization by fraud or concealment. On the contrary, the matter here is the reopening by the court pursuant to Section 340(j) of the Immigration and Nationality Act, 8 U.S.C. 1451(j), of the judgment naturalizing Mrs. Bortle, and the restoring of her petition to a pending

---

1. Section 319(b), 8 U.S.C. 1430(b) reads in pertinent part:
   Any person, (1) whose spouse is (A) a citizen of the United States, (B) in the employment of the Government of the United States * * * and (C) regularly stationed abroad in such employment, and (2) who is in the United States at the time of naturalization, and (3) who declares before the naturalization court in good faith an intention to take up residence within the United States immediately upon the termination of such employment abroad of the citizen spouse, may be naturalized upon compliance with all the requirements of the naturalization laws, except that no prior residence or specified period of physical presence within the United States or within the jurisdiction of the naturalization court or proof thereof shall be required.

status for further determination on the merits of her qualifications. She has the burden of proof as to such qualifications. Petition of Field, 117 F.Supp. 154 (S.D. N.Y.1953).

At one time Section 338 of the Nationality Act of 1940 was "the exclusive procedure for canceling citizenship on the score of fraudulent or illegal procurement based on evidence outside the record." Bindczyck v. Finucane, 342 U.S. 76, 79, 72 S.Ct. 130, 132, 96 L.Ed. 100. It corresponds to the present Section 340(a), supra. The procedural relief granted by Congress to the Immigration and Naturalization Service under Section 340(j) was not intended to "reduce the basic rights of a prospective citizen, but rather to clarify or eliminate the problems created by the decision in Bindczyck v. Finucane," and it "cannot be questioned that Congress had the power to grant the Immigration and Naturalization Service an additional method such as provided by § 340(j) to that formerly limited to proceedings under § 338," now § 340(a). In Re Naturalization of Bartkiw, 199 F.Supp. 762, 765 (E.D.Pa.1961).

In her application to file a petition for naturalization Mrs. Bortle declared that she was married to a citizen of the United States in the Foreign Service and that she "must travel with him." In her petition for naturalization she stated that her husband then resided with her but was "temporarily in Buenos Aires, Argentina," and in addition she made the following statement:

> I intend in good faith upon naturalization to live abroad with my spouse and to resume my residence within the United States immediately upon termination of such employment abroad.

She failed to disclose that she and her husband had recently taken action toward obtaining a divorce, and that she had leased for a year an apartment in Arlington, Virginia.

The questions to be resolved are these: (1) Whether Mrs. Bortle has established that she was living in marital union with her citizen spouse immediately preceding the date she filed her petition for naturalization and (2) Whether she has established that it was her intention upon naturalization to live abroad with her citizen spouse at his overseas station. Some background is necessary in considering these questions.

The marriage of the Bortles was an uneasy one. The evidence is in conflict as to the time when they began discussing divorce. Mr. Bortle maintains that they "planned divorce proceedings" before they "were actually married," and "married only to give the baby a name." On the other hand, Mrs. Bortle contends that there was no discussion of divorce prior to marriage or the child's birth. It is clear, however, that after preliminary inquiries of a lawyer about a prospective divorce, both Mr. and Mrs. Bortle visited the lawyer and signed papers preparatory to obtaining a divorce in Mexico by proxy. This was in Buenos Aires, Argentina, Mr. Bortle having been transferred there from Bogota in early December 1962. The time of the mentioned divorce arrangements was February or early March 1963 preceding the issuance to Mrs. Bortle on April 2, 1963 of an immigration visa through the American Embassy in Buenos Aires where Mr. Bortle was employed.

Following arrangements for their passage by Mr. Bortle, Mrs. Bortle and the baby sailed in April for the United States, arriving on May 2, 1963. Thereafter on June 19, 1963 she signed a lease for one year on an apartment in Arlington, Virginia, to be occupied by "two persons only," and she and the child have since occupied that apartment. On July 17, 1963—about a month after the lease signing—Mrs. Bortle made application to file a petition for naturalization, and on August 6, 1963 her petition for naturalization was filed in this court. As already related, pursuant to that petition she was naturalized on August 13, 1963. In the same month on August 29 a divorce was purportedly issued in Juarez, Mexico, dissolving the marriage

and awarding the custody, care and maintenance of the child to Mrs. Bortle (Government's Exhibit No. 5) although neither of the parties was ever physically present in Mexico in connection therewith. The attorney for Mrs. Bortle herein says that the purported divorce is a forgery. If so, the Bortles were unaware of it for some time. A letter written by Mrs. Bortle to Mr. Bortle's parents in April 1964 (Government's Exhibit No. 7) indicated her impression that Mr. Bortle had remarried and in June 1964 Mr. Bortle considered that he had been divorced by virtue of the Mexican decree (Government's Exhibit No. 9).

At the hearing pursuant to the court order of September 23, 1964, Mrs. Bortle testified that she expected her husband to follow her to the United States for his vacation, that she intended to return with him to Argentina at the expiration of his leave or to go with him to any other foreign country to which he might be assigned, that the time of his anticipated vacation was deferred from time to time, that he did not arrive in the United States until April 1964 about a year after her arrival, that he then spent one week with her in Arlington, Virginia, departed, and never returned. He is serving in Pretoria, South Africa, and was not present at the hearing. However, in a sworn statement dated June 11, 1964 obtained from Mr. Bortle by the Immigration and Naturalization Service (Government's Exhibit No. 9) he stated that he and Mrs. Bortle had not lived together as husband and wife since his return to the United States, that he had known of his assignment to South Africa for only about three and one-half weeks, and that neither of them intended her return to Argentina or to resume living in marital union after she came to the United States.

The circumstances are not such as to justify a conclusion that Mrs. Bortle really intended after she left Argentina to resume living with her husband in marital union. What she herself has written indicates that there was a mutual decision that after the birth of the baby Mr. Bortle would go his way and she would go her way (Government's Exhibit No. 7, page 4), and that they contemplated a divorce (Government's Exhibit No. 4). This is not to say, however, that Mrs. Bortle actually wanted these things. She was very much in love with her husband and would have remained with him had he been willing.

■ The desire of Mrs. Bortle to be a United States citizen and to make a new life for herself in this country is understandable. Her young son is a United States citizen, and she herself has been lawfully admitted to the United States for permanent residence. Nevertheless, under the facts of this case the court is compelled to conclude that, had all the circumstances been known to the Examiner and to the Court at the time she applied for citizenship, the judgment of naturalization would not have been entered.

It is further concluded by the court that Mrs. Bortle has failed to carry her burden of proving her qualifications for naturalization. In other words, she has failed to show that she was living in marital union with her citizen spouse immediately preceding the date she filed her petition for naturalization, and she has likewise failed to show that it was her intention, in good faith, upon naturalization to live abroad with her citizen spouse at his overseas station. Accordingly, the court will vacate so much of the order of August 13, 1963 as admitted the petitioner, Mrs. Bortle, to citizenship.

No fraudulent intent is imputed by the court to Mrs. Bortle from the circumstance that all the true facts were not disclosed in her naturalization papers.[2]

2. In connection with Mrs. Bortle's naturalization application Mr. Bortle sent a letter to the Immigration and Naturalization Service stating that he was still married to her and making no mention of their divorce plans. From this Mrs. Bortle may well have concluded that there was no need for her to mention

Should she apply for naturalization after she has met the requisite residence requirements the vacating of the judgment of naturalization in this case should not be held against her.

This opinion is to serve as the court's findings of fact and conclusions of law.

An appropriate proposed order should be submitted.

such plans, especially in light of Mr. Bortle's nationality, position and knowledgeability. Mrs. Bortle may also have been confused about the requirement that she be living in marital union with Mr. Bortle "immediately preceding the date of the filing" of her naturalization petition as she had lived with him as his wife up to the time she left Argentina. Undoubtedly Mrs. Bortle hoped that her husband had become attached to their child from his association with the child in Colombia and Argentina, hoped that he would miss her and the child after they left Argentina, and hoped that he might seek and join them in the future. Since English is a foreign language to her (although she speaks and writes it) she may have misinterpreted these hopes as intentions. These are a few of the reasons why the court does not imply any insidious or improper motivation to the circumstance that the full facts were not disclosed in Mrs. Bortle's naturalization petition.