**In the Matter of the Petition of Mordchai BASHAN to be admitted as a Citizen of the United States of America.**

**Petition for Naturalization No. 883108.**

United States District Court,
S. D. New York.

Jan. 6, 1982.

Albert Ades, New York City, for petitioner.

J. Scott Blackman, Gen. Atty., New York City, for the Immigration & Naturalization Service.

## MEMORANDUM AND ORDER

CANNELLA, District Judge:

Motion of the Immigration and Naturalization Service ["INS"] to vacate the Order and Judgment of Naturalization dated December 3, 1980 is granted. 8 U.S.C. § 1451(j); Fed.R.Civ.P. 60(b). The petition for naturalization is denied. 8 U.S.C. §§ 1430(a), 1447(a).

On November 25, 1981, the Court conducted a de novo hearing on the instant petition for naturalization. Each party was given a full opportunity to be heard and to present evidence through the testimony of witnesses or otherwise. Kathryn Bashan, petitioner's former wife, testified on behalf of the INS and was cross-examined by counsel for petitioner. The INS also produced documentary evidence. Petitioner did not attend the hearing, produce any witnesses, or offer any evidence other than a Memorandum of Law. The Court has considered all of the above, and has also reviewed the original petition and the INS's papers in support of its prior motion to reopen the Court's Order and Judgment of Naturalization.

## FACTS

On November 2, 1975, petitioner, a citizen of Israel, married Kathryn Bashan, nee Rice, a citizen of the United States, in New York City. Petitioner was lawfully admit-

ted for permanent residence on October 14, 1977, and on August 22, 1980, submitted an "Application to File Petition for Naturalization" ["Application"].[1] On October 15, 1980, before naturalization examiner Marvin Stang, petitioner swore to the truth of the statements contained in the Application, including the statement that his wife and daughter then resided "with me."[2] The same day, petitioner filed his petition, seeking naturalization pursuant to section 319(a) of the Immigration and Nationality Act, 8 U.S.C. § 1430(a) [the "Act"]. To qualify under this section, an individual must have been "living in marital union" with his citizen spouse throughout the three-year period immediately preceding the filing of the petition. Stang approved the petition, and on December 3, 1980, in this Court, the petition was granted and petitioner was naturalized.

On January 15, 1981, Kathryn Bashan appeared at the INS office in New York and alleged in a sworn affidavit that petitioner left their marital residence in May 1980 after she sued him for divorce. She also claimed that they had not resided together since that time and that a final divorce had been granted January 13, 1981. Finally, Ms. Bashan stated that petitioner had ceased his association in their jointly-owned business as of April 11, 1980.[3]

Based on Kathryn Bashan's January 15th affidavit, the INS moved in this Court to reopen the Order and Judgment of Naturalization, pursuant to section 340(j) of the Act, 8 U.S.C. § 1451(j)[4] and Fed.R.Civ.P. 60(b), on the ground that petitioner had knowingly misstated the status of his relationship with his wife, which materially affected his qualifications for naturalization. On April 15, 1981, Judge Edelstein granted

the motion and ordered that the Order and Judgment "be reopened and held in abeyance pending further determination on the merits of petitioners [sic] qualifications for naturalization, subject to being vacated in the [event] that the petitioner is found ineligible at a subsequent hearing herein." Petitioner was not required to surrender his naturalization certificate.

Subsequently, naturalization examiner Stang was redesignated pursuant to section 335(b) of the Act, 8 U.S.C. § 1446(b), to conduct a preliminary examination and recommend a disposition of the reopened petition. At Stang's request, petitioner, his attorney, and Kathryn Bashan appeared at a hearing, but petitioner refused to testify, claiming harassment by his former wife. Ms. Bashan, however, reiterated her claim that petitioner left their home in May 1980 and that they had not resided together since. Under cross-examination by petitioner's counsel, Ms. Bashan stated that she had filed a criminal complaint against petitioner, claiming harassment, but that she later dropped the charges after petitioner threatened to take their daughter out of the country. She also stated that two months after her marriage to petitioner, he told her he married her solely to obtain a "Green Card," that is, to become a permanent resident alien pursuant to 8 U.S.C. § 1255.[5]

Following the hearing, the naturalization examiner prepared a written report containing his findings of fact, conclusions of law and recommendation. In essence, Stang found that petitioner was not residing in marital union with Kathryn Bashan when he filed the instant petition on October 15, 1980, and that the marital union had been terminated in May 1980 by petitioner's

1. Respondent's Exhibit 5 [hereinafter Respondent's Exhibits will be referred to as "RX_____," and Petitioner's Exhibits will be referred to as "PX_____"].

2. RX 5 at 3.

3. RX 4.

4. Section 340(j) provides:
   Nothing contained in this section shall be regarded as limiting, denying, or restricting

the power of any naturalization court, by or in which a person has been naturalized, to correct, reopen, alter, modify, or vacate its judgment or decree naturalizing such person, during the term of such court or within the time prescribed by the rules of procedure or statutes governing the jurisdiction of the court to take such action.

5. RX 3.

departure from his wife and failure to return. Thus, Stang concluded that petitioner failed to qualify for naturalization under section 319(a) of the Act. He recommended that the Order and Judgment of Naturalization be vacated, that the petition be denied and that petitioner surrender his certificate of naturalization for cancellation.[6] On the basis of Stang's report, the INS moved before this Court for the relief recommended therein.

■ At the hearing held on November 25, 1981, Kathryn Bashan reiterated her prior statements that she was living apart from petitioner on October 15, 1980, and that shortly after petitioner was naturalized, she was granted a divorce.[7] As noted above, petitioner did not testify or produce any witnesses or other evidence.[8]

Having reviewed all of the foregoing evidence, the Court finds that (1) on the date the petition was filed, October 15, 1980, petitioner and Kathryn Bashan, who were then legally married, were living separate and apart due to marital disharmony; (2) they had been so separated since May 1980; and (3) they neither resumed living together thereafter nor ever intended to do so.

## DISCUSSION

■ Initially, the Court notes that the INS followed the proper procedures in this case. Once the motion to reopen was granted by Judge Edelstein pursuant to section 340(j) and Rule 60(b), the petition was restored to the Court's calendar as a pending petition. As such, it was "governed by the same procedures as are appli-

cable to other pending petitions." *In re Cardines*, 366 F.Supp. 700, 707 (D.Guam 1973). Thus, petitioner bears the burden of establishing his eligibility for naturalization, as distinguished from a revocation proceeding pursuant to section 340(a), 8 U.S.C. § 1451(a), in which the INS bears the burden of establishing that the naturalized citizen obtained his naturalization certificate illegally or fraudulently. *See id.* at 703, 707–08. *See also In re Bortle*, 244 F.Supp. 319, 320–21 (D.D.C.1965). Moreover, since Judge Edelstein's order placed the petition on the pending calendar, the naturalization examiner was properly designated to conduct a preliminary examination and hearing and to submit recommendations. 8 U.S.C. § 1446(b).

■ Because the INS made an adverse recommendation, petitioner was entitled to a final hearing de novo on the petition. *See* 8 U.S.C. § 1447; *In re Cardines, supra*, 366 F.Supp. at 708. Petitioner was notified of the motion and scheduled hearing, but apparently chose not to avail himself of the opportunity to appear and testify.

■ Turning now to an interpretation of the phrase "living in marital union," the Court notes that existing precedent is less than clear. In *In re Kostas*, 169 F.Supp. 77 (D.Del.1958), petitioner's marital relationship was "marked by frequent separations of substantial duration," during the three years immediately preceding the filing of the petition. *Id.* at 78. The court remarked that Congress reduced the waiting period for filing a petition from the normal five years to three years "evidently" be-

6. RX 2.

7. Transcript of Hearing at 6–8 (Nov. 25, 1981).

8. At the hearing, petitioner's counsel submitted a Memorandum of Law, claiming that (1) the INS's "allegations ... are unclear and inconclusive;" (2) "[a]ll ... the facts were available to the [INS] on October 15, 1980 and December 3, 1980;" (3) petitioner told the truth concerning his marital status; (4) Kathryn Bashan made misleading statements in her January 15, 1981 affidavit, *see* RX 4, and continues to make false allegations; and (5) Ms. Bashan is merely harassing petitioner in their ongoing family dispute. *See* PX 1. The first two claims fail to

recognize that petitioner bears the burden of proof in this proceeding, as more fully explained in the Discussion section *infra*, and are also refuted by the evidence. By the third claim, petitioner apparently means that he accurately stated that he was married when he filed the petition. As discussed below, this fact does not necessarily prove that petitioner and his wife were then "living in marital union." The fourth claim is belied by the evidence, and the fifth claim, concerning Kathryn Bashan's motivation, is irrelevant except to impeach her credibility. The Court, however, finds her to be a credible witness.

cause "a noncitizen spouse who live[s] in close association with a citizen spouse for three years would more speedily absorb the basic concepts of citizenship than one not so situated." *Id.* The court, therefore, held that the relevant phrase should "be given a strict construction," and that "while a short period of separation such as two weeks should not operate to destroy a petitioner's rights under [section 319(a)], a close continued marital association is obviously intended." *Id.* The petition was denied.

The *Kostas* court's use of "evidently" as a preface to its statement of Congressional intent was mandated by a definitive lack of legislative history, a point underscored by the court in *In re Olan*, 257 F.Supp. 884, 888–90 (S.D.Cal.1966). In *Olan*, petitioner's spouse had left home several times for short periods during the three years prior to the filing of the petition, and had been living apart for the two and one-half months immediately preceding the filing. The spouse, however, left most of his clothes at home, continued to provide financial support for petitioner and their two children, received his mail at home, and talked of reconciliation with petitioner. Moreover, both petitioner and her spouse testified "that there was no intent of permanent separation during the two and one-half months." *Id.* at 889. Nevertheless, the court found it undesirable to conduct an inquiry into the circumstances of each case seeking to uncover the existence of a "close continued marital association," and held instead that " 'living in marital union' means simply living in the status of a valid marriage," *In re Olan, supra*, 257 F.Supp. at 890.[9]

Finally, in *In re Lee*, 480 F.2d 673 (2d Cir. 1973), petitioner falsely stated, during the preliminary examination, that he was living with his wife. The Second Circuit affirmed the district court's denial of the petition, but on grounds other than petitioner's failure to establish "marital union." In dictum, the court stated:

> [I]f [petitioner] had admitted at the proper time that he was no longer living with his wife, he could not have been denied naturalization on that basis alone [because] [b]etween the date of the filing of the petition and the date of naturalization, section 319(a) only requires that a legally valid marriage remain in existence.

*Id.* at 677 & n.6 (footnote omitted). The Second Circuit cited *Olan* for this proposition, but did not mention *Kostas.*[10]

Having carefully weighed the rationale of each of the above decisions, the Court concludes that the analysis enunciated by the district court in *Kostas* should be applied in this case. In the first place, the holding of the district court in *Olan* is not binding precedent on this Court, and, in any event, *Olan* is factually distinguishable from the case at bar.[11]

---

**9.** The Court has found just two other published opinions that address the question of whether married persons living apart at some time during the period immediately preceding the filing of a naturalization petition are "living in marital union." *See In re Bortle*, 244 F.Supp. 319 (D.D.C.1965); *In re Omar*, 151 F.Supp. 763 (S.D.N.Y.1957). Because neither court explained its reasoning, however, they are of limited usefulness.

In *Omar*, petitioner was separated from his wife for two weeks at the direction of a state court judge, as a "cooling off" period following marital discord and the filing of a criminal complaint by the wife. During the two weeks, petitioner visited his wife five times and continued to provide financial support. Without defining the relevant phrase, the court found that the "marital union" had not been interrupted by petitioner's temporary absence, lik-

ening the case to a short vacation taken by one or the other spouse. *See* 151 F.Supp. at 764.

In *Bortle*, arrangements were made to obtain a foreign divorce five months before the petition was filed, petitioner and her citizen spouse lived apart for the four months preceding the filing, and the divorce was granted two weeks after petitioner was naturalized. Without attempting to explain the meaning of "living in marital union," the court denied the petition, apparently assuming that the phrase required petitioner and her spouse to be living together when the petition was filed. *See* 244 F.Supp. at 322. The *Olan* court did not mention or discuss *Bortle.*

**10.** The Second Circuit also did not discuss *In re Bortle, supra*, or *In re Omar, supra.*

**11.** Although the *Olan* court discussed the facts of its case at length, in the end only the fact

Second, the Court declines to follow the Second Circuit's apparent approval of the *Olan* court's holding. As noted above, the Second Circuit's reference to *Olan* was in dictum. Moreover, the statement in *Lee* that section 319(a) requires that a legally valid marriage exist *between* the date the petition is filed and the date of naturalization misstates *Olan* and misreads section 319(a). By its terms, section 319(a) speaks only of "the three years immediately preceding the date of filing [the] petition." It does not mention the period between that date and the date of naturalization.

Third, a syntactical analysis of the phrase "living in marital union with the citizen spouse" reveals that the term "in marital union" is a modifier of "living . . . with the citizen spouse." Thus, "in marital union" particularizes the section's requirement that a petitioner be *living with* his citizen spouse. Standing by itself, "living with" can only mean "actually residing with," and, also by itself, "marital union" can only mean the state of being married. Therefore, taken as a whole, the phrase describes someone who actually resides with his or her current spouse.

Finally, if Congress intended that the mere existence of a legally valid marriage would be sufficient to shorten the normal waiting period for naturalization from five to three years, the Court fails to see why it did not state so explicitly. Since it did not, the *Kostas* court's interpretation reflects the most likely Congressional intent because to reward the mere existence of marriage instead of "a close continued marital association" would be to encourage sham marriages arranged solely to obtain citizenship.

██ Under the applicable law, the Court is compelled to reach the following conclusion: Petitioner and Kathryn Bashan, a citizen, were lawfully married during the three years immediately preceding the filing of the petition on October 15, 1980, but they had not been living together since May 1980 and never intended to resume living together. This was neither a temporary absence,[12] nor even an extended marital spat which both parties intended to resolve.[13] Rather, it was a separation of long duration, which both parties intended to be permanent. Thus, petitioner has failed to establish the existence of a close continued marital association throughout the three years prior to the filing of the petition. Accordingly, petitioner has not complied with the requirements of section 319(a) and his petition must be denied.

## CONCLUSION

In light of the foregoing, the petition for naturalization is denied, 8 U.S.C. §§ 1430(a), 1447(a), and the motion of the Immigration and Naturalization Service to vacate the Order and Judgment of Naturalization dated December 3, 1980 is granted, 8 U.S.C. § 1451(j), Fed.R.Civ.P. 60(b).

The foregoing constitutes the Court's findings of fact and conclusions of law.

Submit order on notice within three days of the date of this Memorandum and Order.

SO ORDERED.

that a legal marriage existed was deemed dispositive by the court. This Court recognizes that with respect to the latter fact, the instant case is not distinguishable from *Olan*. Nevertheless, it appears that the *Olan* court strained to reach what it considered to be an equitable result in light of the circumstances of that case. The Court believes that if facts similar to those of the instant petition were before the *Olan* court, it may have reached a different conclusion.

12. See the discussion of *In re Omar*, *supra*, in note 9 *supra*.

13. *See In re Olan*, *supra*.