**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Uchechukwu Alex–Synthey MADUNO,**
**Defendant–Appellant.**

**No. 93–9429.**

United States Court of Appeals,
Eleventh Circuit.

Dec. 27, 1994.

R. Gary Spencer, Asst. Federal Public Defender, Federal Defender Program, Atlanta, GA, for appellant.

James R. Harper, III, Amy Levin Weil, Asst. U.S. Attys., Office of U.S. Atty., Atlanta, GA, for appellee.

Before BIRCH and DUBINA, Circuit Judges, and JOHNSON, Senior Circuit Judge.

DUBINA, Circuit Judge:

Appellant Uchechukwu Alex–Synthey Maduno ("Maduno") appeals his conviction and sentence for a violation of 18 U.S.C. § 1425(b), which charged that Maduno did knowingly apply for, procure, and obtain naturalization and citizenship for himself to which he was not entitled. We affirm.

## I. *STATEMENT OF THE CASE*

### A. *Facts*

Maduno entered the United States on a two-year student visa in 1983. He met Stella Tabor Okeke ("Okeke"), a United States citizen, in November of 1983. Maduno and Okeke were married in April 1984. The couple established their household in Oxford, Mississippi, along with Okeke's three children, presumably from a prior marriage. This home was student housing at the University of Mississippi, where Maduno was a student. Due to the size of the apartment, the children moved to their maternal grandmother's house approximately one month after the couple moved into the apartment. Maduno and Okeke lived in the apartment from April 1984 to June 1986. Maduno never adopted Okeke's children and provided no financial support for them.

After a little more than two years of marriage, Okeke separated from Maduno. She considered the marriage to be a complete

failure and moved in with her mother and children. She testified at Maduno's trial that she had no intentions of reconciling her marriage with him and believed that the marriage was no longer continuing. Although the couple remained separated, there was no divorce decree entered. Okeke attempted to obtain a divorce in 1986, but the petition was rejected because she was unable to locate Maduno after he left the University of Mississippi. She filed a new petition in 1992 and also mailed several letters to Maduno informing him that she did not intend to reconcile their marital relationship.

From 1986 to 1993, Maduno provided no spousal or child support. He moved to Atlanta, Georgia, and lived in various apartment complexes throughout the city, including the Parktown North apartments. His roommates at Parktown North were three males named Chukwndi Maduno, Emunall,[1] and Paul Maduno. On the lease form, Maduno indicated that he was married, but he did not list the name of his spouse. The apartment complex manager testified at Maduno's trial that she never saw any women living in the apartment.

After moving out in 1986, Okeke did not see Maduno until the trial in 1993. Okeke never lived with Maduno in Atlanta and did not hear from him for three years. After moving out, her first contact with him was a telephone conversation in 1989. During 1991 and 1992, Okeke received letters from Maduno asking Okeke to say that they lived together at different addresses in California, Georgia and other places. Maduno also called Okeke in 1993 and invited her to Georgia in order to resolve their marital problems. Okeke declined the offer.

Maduno applied for his certificate of naturalization on June 13, 1988. This application was based upon his marriage to Okeke. He interviewed with the immigration examiner on September 22, 1988. On his application, Maduno indicated that he was married to Okeke and they resided at 1418 North Cliff Valley Way in Atlanta, Georgia. According

to immigration procedures, the examiner would question applicants if different addresses were shown for the spouses. Maduno signed the petition which stated that he had lived with his spouse in marital union for the preceding three years.

After his application was approved, a final naturalization hearing was conducted. This hearing is conducted to determine if the applicant is still eligible for naturalization. On the accompanying form, Maduno indicated that he was not separated or divorced. He received his certificate of naturalization on February 10, 1989.

During the trial, Okeke testified that the couple ceased living together in June 1986. Maduno offered testimony of several witnesses who said that they saw or spoke to Okeke. Peter Ekwealor stated that he spoke to Okeke over the telephone, but never met her in person. Randy Smith testified that he saw a woman enter Maduno's apartment, but he was not introduced to her. Benjamin Wells Payne mentioned that he saw Maduno and his wife on one occasion at the Parktown North apartments. Tracey L. Rush, a roommate of Maduno's former roommate Chukwndi Maduno, stated that she saw the couple in church together on one occasion.

### B. *Procedural History*

On January 20, 1993, a federal grand jury in the Northern District of Georgia returned a four-count indictment against Maduno. Counts One and Three charged that Maduno knowingly obtained naturalization that he was not entitled to, in violation of 18 U.S.C. § 1425(b). Counts Two and Four were dismissed. After a trial by jury, Maduno was convicted of both counts and sentenced to a six-month term of imprisonment as well as twenty-four months of supervised release. The district court also imposed a $1,000.00 fine and a $100.00 special assessment. After the sentencing hearing, the district court revoked Maduno's certificate of naturalization pursuant to 8 U.S.C. § 1451(f). Maduno then perfected this appeal.[2]

---

1. The record does not indicate the first name of this individual.

2. The record demonstrates that Maduno filed his notice of appeal on November 19, 1993. The judgment and commitment order, however, was entered on November 23, 1993. The order to

## II. *ISSUES*

1. Whether the district court erred in its instruction to the jury regarding the definition of "living in marital union."

2. Whether the district court erred in declining to give Maduno's proffered theory of defense instruction to the jury.

3. Whether the district court had jurisdiction to cancel Maduno's certificate of naturalization after he filed his notice of appeal.

## III. *STANDARD OF REVIEW*

■ A district court's refusal to give a requested instruction in its charge to the jury is reviewed under an abuse of discretion standard. *United States v. Morales,* 978 F.2d 650, 652 (11th Cir.1992). Reversible error for failure to give a requested instruction occurs if the proffered instruction was substantially correct, the requested instruction was not addressed in charges actually given, and failure to give the instruction seriously impaired the defendant's ability to present an effective defense. *United States v. Mendoza–Cecelia,* 963 F.2d 1467, 1478 (11th Cir.), *cert. denied,* — U.S. —, 113 S.Ct. 436, 121 L.Ed.2d 356 (1992). Whether a court has jurisdiction over a particular case is a question of law subject to plenary review. *See Mars v. Mounts,* 895 F.2d 1348, 1351 (11th Cir.1990).

## IV. *ANALYSIS*

### A. *Definition of "Living in Marital Union"*

This is an issue of first impression in our circuit and there is very little case law on the issue.

Maduno was convicted of violating 18 U.S.C. § 1425(b), which makes it a crime for an individual to knowingly obtain naturalization that he is not entitled to. The statute provides:

Whoever, whether for himself or another person not entitled thereto, knowingly issues, procures or obtains or applies for or otherwise attempts to procure or obtain

naturalization, or citizenship, or a declaration of intention to become a citizen, or a certificate of arrival or any certificate or evidence of naturalization or citizenship, documentary or otherwise, or duplicates or copies any of the foregoing—

Shall be fined not more than $5,000 or imprisoned not more than five years, or both.

In order to become naturalized, a person whose spouse is a citizen of the United States must, immediately preceding the date of filing his petition for naturalization, reside continuously, after being lawfully admitted for permanent residence, within the United States for at least three years, and during the three years immediately preceding the date of filing of his petition, live in marital union with the citizen spouse. *See* 8 U.S.C. § 1430(a). We are persuaded that Maduno was not entitled to naturalization because he misrepresented his marital status on his application for naturalization.

■ The district court's definition of "living in marital union" requires the individual petitioning for naturalization to actually reside with his spouse. Maduno contends that "living in marital union" means living in the status of a valid marriage. Maduno bases his contention on the district court's decision in *In re Olan,* 257 F.Supp. 884 (S.D.Cal. 1966). In *Olan,* the spouse physically left the home for two and one-half months during the requisite period. During that time, however, the husband continued to supply financial support to his wife and family. *Id.* at 887. Moreover, the district court had the testimony of both the husband and the wife that there was no intent of permanent separation during the two and one-half months. Additional evidence indicated that the husband, although he slept elsewhere, still used the marital home to receive his personal mail, to store his clothes and books, and to serve as the address on his voter's registration card. *Id.* Based upon these facts, the court in *Olan* concluded that "living in marital

revoke the certificate of naturalization was filed on November 23, 1993, and entered on the docket sheet on November 29, 1993. With regard to

this latter order, Maduno filed a motion to stay execution of the order which was denied.

union" meant "living in the status of a valid marriage." *Id.* at 890.

In the present case, we have the testimony from Okeke that she considered the marriage over when she moved out of the apartment. Also, Maduno did not provide any financial support to Okeke or her children after the couple separated. Thus, the facts in this case are distinguishable from those in *Olan.*

■ The government relies upon *Petition for Bashan,* 530 F.Supp. 115 (S.D.N.Y.1982), for the proposition that the district court's definition of "living in marital union" was correct. The *Bashan* court concluded that the term "living in marital union" described someone who actually resides with his or her spouse. *Id.* at 120. The *Bashan* court distinguished *Olan* on several grounds. First, the *Bashan* court observed that the *Olan* court was straining to reach an equitable decision in light of the circumstances of the case. *Id.* at 119–120 n. 11. Second, the *Bashan* court rejected the *Olan* holding on the basis of congressional intent. It noted that if Congress decided that the mere existence of a valid marriage was required, then it could have stated so explicitly. *Id.* at 120. Because Congress failed to do so, a requirement of "actually residing together" was a more appropriate interpretation of congressional intent. Otherwise, if naturalization merely required the existence of a valid marriage, then sham marriages would be encouraged. *Id.*

In another case addressing this issue, *In re Kostas,* 169 F.Supp. 77 (D.Del.1958), the court held that the language "living in marital union" should be given a strict interpretation. In *Kostas,* the petitioner's marital relationship was "marked by frequent separations of substantial duration," during the three years immediately preceding the filing of the petition. *Id.* at 78. The court remarked that Congress reduced the waiting period for filing a petition from the normal five years to three years "evidently" because "a noncitizen spouse who live[s] in close association with a citizen spouse for three years would more speedily absorb the basic concepts of citizenship than one not so situated." *Id.* The court, therefore, held that the relevant phrase should "be given a reasonably strict construction," and that "while a short period of separation such as two weeks should not operate to destroy a petitioner's rights under [section 319(a) ], a close continued marital association is obviously intended." *Id.* The end result in *In re Kostas* was that the district court denied the petition.

In *In re Lee,* 480 F.2d 673 (2d Cir.1973), the petitioner falsely stated, during the preliminary examination, that he was living with his wife. The Second Circuit affirmed the district court's denial of the petition, but on grounds other than the petitioner's failure to establish "marital union." In dictum, the court stated:

> [I]f [petitioner] had admitted at the proper time that he was no longer living with his wife, he could not have been denied naturalization on that basis alone [because] [b]etween the date of the filing of the petition and the date of naturalization, section 319(a) only requires that a legally valid marriage remain in existence.

*Id.* at 677 & n. 6 (footnote omitted). The Second Circuit relied upon *In re Olan* for this proposition, not *In re Kostas.*

In the present case, the district court gave the following instruction to the jury regarding the definition of "living in marital union:"

> Now the term living in marital union with the citizen spouse means that the applicant actually resided with his current spouse for three years prior to the filing of the petition.

> A short temporary absence of either spouse will not alter the relationship. In other words, a short temporary absence, like going on a vacation, going to another particular place for a short period of time, would not alter that particular relationship.

Maduno requested that the court give the following instruction:

> If you find that the defendant and his spouse were in marital union for three years prior to the filing of the petition, but physically separated at some time without the intent to permanently separate, you must find the defendant not guilty of the charges in the information [sic].

We hold the district court's instruction to be a correct statement of the law. Maduno's requested instruction imposed an "intent" element which is not required by statute. A reasonable conclusion may be drawn that a couple resides together if they are "living in marital union." Short periods of separation are normal, but the record in this case demonstrated that Maduno did not live with Okeke for many years after their separation. Additionally, section 319(a) of the Immigration and Nationality Act, 8 U.S.C. § 1430, requires that the alien live with the citizen spouse in marital union for three years. Moreover, 8 C.F.R. § 319.1(b) states that "[a]n applicant lives in marital union with a citizen spouse if the applicant actually resides with his or her current spouse." Accordingly, based upon reasonable interpretation of the appropriate statutes, the *Bashan* decision, and congressional intent, the district court's definition of "living in marital union" is correct. Consequently, the jury instruction given by the district court was also correct.

### B.  *Maduno's Requested Instruction*

■ As noted, Maduno contends that the district court erred in failing to give his requested jury instruction. He contends that a separation without the intent to permanently separate does not alter the marital relationship. Because we see no legal or factual basis for such an instruction, we hold that the district court did not abuse its discretion in declining to give Maduno's requested instruction.

Maduno's requested instruction added an intent element to any separation occurring while "living in marital union." There is no basis in the law for addition of this intent element. Also, because we have held that the district court's instruction was a correct statement of the law, there would be no basis for the district court also giving Maduno's instruction which incorrectly stated the law. Finally, Maduno provided no basis in fact for his instruction. He provided witnesses who testified to isolated incidents in 1987 and 1988 where these witnesses saw Maduno with a woman, allegedly his wife. Their testimony, however, did not support an inference

that Maduno did not intend to be permanently separated from his wife. Accordingly, the district court did not err in refusing to give Maduno's requested jury instruction.

### C.  *Jurisdiction to Cancel Maduno's Certificate of Naturalization*

■ The district court revoked Maduno's certificate of naturalization after he filed his notice of appeal. Maduno asserts that his notice of appeal divested the district court of jurisdiction to revoke the certificate. We disagree. Because the revocation is a simple ministerial task and is statutorily required, the district court did not relinquish jurisdiction to issue the order. The district court signed the judgment and commitment on November 16, 1993. Maduno filed his notice of appeal on November 19, 1993. The judgment and commitment, as well as the notice of appeal, was entered on the docket sheet on November 23, 1993. On that same day, the court filed its order canceling the certificate of naturalization. That order was entered on the docket sheet on November 29, 1993.

The order of cancellation was issued pursuant to 8 U.S.C. § 1451(f), which provides:

> When a person shall be convicted under section 1425 of Title 18 of knowingly procuring naturalization in violation of law, the court in which such conviction is had shall thereupon revoke, set aside, and declare void the final order admitting such person to citizenship, and shall declare the certificate of naturalization of such person to be canceled. Jurisdiction is conferred on the courts having jurisdiction of the trial of such offense to make such adjudication.

■ Ordinarily, a defendant's notice of appeal divests the district court of jurisdiction, which is then transferred to the court of appeals. *United States v. Vicaria*, 963 F.2d 1412, 1415 (11th Cir.), *cert. denied*, —— U.S. ——, 113 S.Ct. 596, 121 L.Ed.2d 534 (1992). Under limited exceptions to this general rule, however, the filing of the notice of appeal does not divest the district court of jurisdiction. *Id.* at 1415 n. 2. One of the exceptions involves the appeal of a frivolous or dilatory double jeopardy claim. If the district court makes written findings that a double jeopar-

dy claim is frivolous or dilatory, then the interlocutory appeal does not divest the district court of jurisdiction to retry the case. *United States v. Farmer,* 923 F.2d 1557, 1565 (11th Cir.1991). This approach prevents intentional dilatory tactics, and promotes the smooth and efficient functioning of the judicial process.

A similar approach can be taken in this case. The revocation is a simple ministerial task and involves no exercise of discretion because the revocation is statutorily mandated. Moreover, there is existing case law indicating that the revocation does not have to wait until the defendant appeals his conviction. *See United States v. Bridges,* 90 F.Supp. 973, 974 (N.D.Cal.1950) (action upon government's motion for an order revoking and declaring void the final order admitting defendant to citizenship was not required to be deferred until disposition of the appeal which was being prosecuted). Accordingly, we hold that the district court had jurisdiction to revoke Maduno's naturalization certificate and that the revocation did not prejudice Maduno.

## V. *CONCLUSION*

For the foregoing reasons, we affirm Maduno's conviction and sentence in all respects.

AFFIRMED.