United States Court of Appeals,

Eleventh Circuit.

No. 96-2642.

UNITED STATES of America, Petitioner-Appellant,

v.

Paul SJEKLOCHA, a.k.a. Paul Cutter, Respondent-Appellee.

May 30, 1997.

Appeal from the United States District Court for the Middle District of Florida. (No. 85-65-Cr-ORL-18), G. Kendall Sharp, Judge.

Before ANDERSON and EDMONDSON, Circuit Judges, and ROSENN[*], Senior Circuit Judge.

ROSENN, Senior Circuit Judge:

This appeal raises a unique question relating to the sentencing of a criminal defendant: may a judge, after imposing a sentence for unlawfully conspiring to export defense articles to Iran without an export license or written approval by the Department of State and conspiring to commit other related crimes, substantially reduce the sentence because of revelations by the President of the United States that at or around the same time the Government was prosecuting the defendant, the United States was covertly negotiating with Iran for the sale of military armaments, including the same type weapons that were the subject of this prosecution. The sentencing judge was persuaded to reduce the sentence. The Government timely appealed. We reverse.

I.

In 1985, a jury convicted Paul Sjeklocha, a.k.a. Paul Cutter (hereinafter referred to as "the defendant"), of willfully conspiring in violation of 18 U.S.C. § 371: (1) to sell defense articles and weapons to Iran without first obtaining an export license or written approval from the Department of State as required by 22 U.S.C. §§ 2778(b)(2) and (c), and 22 C.F.R. 121.1, 123.1, 127.1(a), and 127.1(d); (2) to defraud the United States in the implementation of foreign policy; (3) to use wire, radio, and telephone communications as part of this elaborate scheme to defraud the United States,

---

[*]Honorable Max Rosenn, Senior U.S. Circuit Judge for the Third Circuit, sitting by designation.

in violation of 18 U.S.C. § 1343; and (4) to transport in foreign commerce stolen or fraudulently obtained goods. The jury also convicted the defendant of two counts of using wire, radio, and telephone communications as part of this scheme and also devising a scheme to defraud the United States and its agencies of the right to implement the foreign policy and conduct the affairs of the United States of America, in violation of 18 U.S.C. § 1343. *See United States v. Sjeklocha,* 843 F.2d 485 (11th Cir.1988). The district court sentenced the defendant to sixty months in prison, the maximum possible sentence, on the conspiracy charge, and five years probation, to run concurrently but consecutive to the prison time, for the remaining two convictions. The defendant filed a timely appeal of his convictions.

In 1986, while the defendant's direct appeal was pending, information concerning what eventually became known as the Iran-Contra affair became public. President Ronald Reagan revealed that the United States Government had secretly negotiated to sell military armaments to Iran in an attempt to improve relations between the two nations, secure the release of American hostages being held in the Middle East, and funnel the money to support the Contra rebels in Nicaragua. Shortly after these startling revelations, a newspaper article quoted the foreman of the jury that convicted the defendant in this case as saying that he would have voted for acquittal had he known of the Government's covert operations in Iran.

Following this article, the defendant moved for a new trial, alleging newly discovered evidence, specifically the Government's involvement in the Iran-Contra affair. The district court certified his motion to the Eleventh Circuit Court of Appeals; pending resolution of this matter, the court released the defendant on his own recognizance. This court remanded the matter to the district court to consider whether the newly-discovered evidence would merit a new trial. *United States v. Sjeklocha,* 813 F.2d 409 (11th Cir.1987) (unpublished table decision). The district court granted the defendant's motion for a new trial, relying heavily on the jury foreman's statement that he would have acquitted the defendant of all charges had he known of the Iran-Contra affair.

On appeal, this court vacated the district court's order granting a new trial. The court concluded that the jury foreman's statement was improperly considered under Federal Rule of

Evidence 606(b), and therefore the trial court erred in granting the defendant a new trial based upon that evidence. *United States v. Sjeklocha,* 843 F.2d 485, 488 (11th Cir.1988). The Government then moved to reinstate the original Judgment and Commitment Order. The district court revoked the defendant's bond in May, 1989; by this time, however, the defendant had fled the country, and he remained a fugitive until his arrest in Arkansas in March, 1996. While the defendant was a fugitive, the direct appeal from his original conviction was reinstated, and this court affirmed his conviction on all counts. *United States v. Sjeklocha,* 891 F.2d 905 (11th Cir.1989) (unpublished table decision).

The defendant returned to the district court for a bench warrant hearing on his bond violation, and the court stated at that time that it "would love to resentence Mr. Cutter to time served." The district court believed it lacked the authority to resentence the defendant, however, and asked the parties to brief the matter. The defendant filed a motion to vacate or correct his original sentence pursuant to former Fed.R.Crim.P. 35(a) and 28 U.S.C. § 2255. He maintained that his sentence was based on materially incorrect information, to wit, the covert Iran-Contra affair, and that his sentence would certainly have been different had this information been known by the court at the time of sentencing. The Government challenged this motion, asserting that the defendant was not sentenced upon materially false information, but solely upon his own illegal conduct, not on anything related to the Iran-Contra affair, and that the district court therefore lacked the authority to reduce his sentence.

The district court granted the defendant's motion on April 9, 1996, and reduced his sentence to forty months, concluding that, based upon the new evidence, the sixty month sentence was not warranted. The district court did not hold a resentencing hearing and did not make an explicit finding that the sentence was based on materially false or incorrect information.

## II.

The question whether the district court had the authority to resentence the defendant under former Fed.R.Crim.P. 35(a) and 28 U.S.C. § 2255 is a legal question subject to plenary review. *United States v. Maduno,* 40 F.3d 1212, 1215 (11th Cir.1994), *cert. denied,* --- U.S. ----, 116 S.Ct. 123, 133 L.Ed.2d 72 (1995). The district court's factual findings at sentencing are reviewed under

the clearly erroneous standard. *United States v. Howard,* 923 F.2d 1500, 1503 (11th Cir.1991). The district court's application of law to the facts is reviewed *de novo. United States v. Burton,* 933 F.2d 916, 917 (11th Cir.1991).

It is obvious that the district court lacked the authority to resentence the defendant under former Rule 35(a) because that narrow rule only permits resentencing in the case of an illegal sentence. *See Hill v. United States,* 368 U.S. 424, 430, 82 S.Ct. 468, 472, 7 L.Ed.2d 417 (1962) (narrow function of Rule 35 is to correct illegal sentence). The five-year sentence imposed by the district court is the statutory maximum, both now and in 1986, when the defendant was originally sentenced. Therefore, the defendant's sentence is not illegal and the district court lacked the authority to reduce it pursuant to former Rule 35(a).

However, "it is well-established that sentences based on erroneous and material information or assumptions violate due process and that a new sentencing hearing is required where the trial court has relied on such information or assumptions." *United States v. Darby,* 744 F.2d 1508, 1532 (11th Cir.1984), *cert. denied,* 471 U.S. 1100, 1100, 105 S.Ct. 2322, 2323, 85 L.Ed.2d 841 (1985). Therefore, the district court did have the authority to reduce the defendant's sentence pursuant to 28 U.S.C. § 2255 *if* he had been sentenced on materially false information. In the present matter, however, the district court did not rely on materially false information in sentencing the defendant and it thus erred in reducing the sentence pursuant to 28 U.S.C. § 2255.

The district court reduced the defendant's sentence based upon information subsequently made available to the court (and the American public) concerning the Iran-Contra affair. The defendant has not alleged here, nor has he ever alleged, that he was a participant in the Government-conducted sale of arms and munitions to Iran. Moreover, his conspiratorial activity to steal or fraudulently obtain arms and sell them to Iran was entirely separate from, and apparently conducted almost entirely prior to, the Iran-Contra affair.[1] Therefore, this new information does not directly contradict or falsify any of the facts the Government proved relating the defendant's illegal

---

[1]The defendant was arrested in August, 1985 on charges relating to the weapons sales; the Government-conducted weapon sales to Iran began in late 1985 and continued into early 1986.

conduct at trial. Quite simply, this new information in no way bears upon the defendant's conduct. The Government's conduct in foreign policy and political affairs of state was wholly irrelevant and had no bearing on the defendant's independent and wholly illegal attempts to sell arms and munitions to Iran in violation of laws enacted by Congress.

Although many Americans may possibly have felt betrayed and disappointed by the revelations concerning the Government's involvement in the sale of arms to Iran and the funneling of the proceeds to Contra rebels in Nicaragua, such anguish, however great, is an insufficient basis on which to ignore constitutional laws enacted by Congress. The defendant's participation in a conspiracy to sell to Iran and his other related illegal activities do not become less illegal simply because the Government for reasons of its own security engaged in the transfer of arms and munitions to Iran. The Government's diplomatic conduct of international negotiations or its policies in affairs of state do not excuse a person's violation of federal criminal laws. As the Government aptly noted in its brief, "[h]ad Oliver North sold crack to the Contras, other drug dealers would not get a break in their sentences." The defendant's conduct was illegal—a crime; the Government's covert activities involving Iran in no way justify or excuse defendant's wrongful acts.

The defendant argues that information concerning the Iran-Contra affair was material to his defense that the defendant was only engaged in the same conduct as the Government. The defendant, however, has never argued that his attempt to illegally sell arms to Iran was connected to, or even motivated by, America's foreign-policy efforts to covertly engage in the sale of arms to Iran in the effort to recover American hostages. Moreover, the defendant's effort to sell arms without an export license would be illegal regardless of the proposed buyer, whether it was a nation with whom the United States openly dealt in arms and munitions or a nation with whom such transactions were allegedly prohibited. Thus, this information of the Executive's gambit in supplying a quantity of arms to Iran cannot now be deemed material to the defendant's sentence for his own illegal conduct in violating the laws of the United States.

Moreover, the revelations pertaining to the Government's foreign policy activities do not render any of the information the district court relied on at sentencing incorrect or materially false.

If the court sentenced the defendant relying on the assumption that the Government was not engaged in arms negotiations with Iran, that assumption is not evident from any of the information contained in the record on appeal. Although it is possible that the court would have imposed a less severe sentence on the defendant had this information been known at the time of the sentencing hearing, it did not give the defendant the maximum sentence solely because of a misperception about this country's foreign policy towards Iran. The defendant did not know at the time of his illegal conduct that covert government policy was to retrieve hostages from Iran by weapons sales. The existence of that executive branch policy does not alter the district court's initial finding that the defendant was "the most prominent force" in the conspiracy to sell arms to Iran in violation of federal law, that is, the specific conspiracy which underlies the particular case before us now.

As Justice Rehnquist has noted, "[The Supreme Court has] required a convincing showing that the introduction of specific constitutionally infirm evidence had an ascertainable and "dramatic' impact on the sentencing authority" to prevail on such a claim. *Zant v. Stephens,* 462 U.S. 862, 903, 103 S.Ct. 2733, 2756, 77 L.Ed.2d 235 (Rehnquist, J., concurring). In the present matter, the defendant has failed to show that this assumption that the United States of America was not selling arms to Iran had an effective impact on the judge at the time of sentencing. Consequently, the district court did not sentence the defendant based on materially false information and lacked the authority under 28 U.S.C. § 2255 to reduce the defendant's sentence from the original sixty-month sentence imposed.

### III.

The order of the district court reducing the defendant's sentence to forty months is hereby VACATED and the case is REMANDED to the district court with directions to reinstate the original Judgment and sentence imposed on Paul Sjeklocha, a/k/a Paul Cutter.